ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL AGENCY OF NEWS LLC, and EVGENIY LVOVICH ZUBAREV,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 5:18-cv-07041<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:   Hon. Lucy H. Koh<br>Date:    July 18, 2019<br>Time:    1:30 p.m.<br>Crtrm.:  8, 4th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION TO DISMISS ................................................................... 1

STATEMENT OF RELIEF SOUGHT ................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION ........... 1

I.  INTRODUCTION ........................................................................................... 1

II.  BACKGROUND AND SUMMARY OF ALLEGATIONS ............................. 3

    A.  Russian Interference in the United States Presidential Election ............................. 3

    B.  Facebook's Cooperation With the United States' Investigation ............................. 4

    C.  Facebook's Removal of FAN's Profile ................................................................. 5

    D.  Procedural History ................................................................................................ 5

III.  LEGAL STANDARDS ................................................................................... 6

IV.  ARGUMENT .................................................................................................. 6

    A.  Plaintiffs' Statutory and Common Law Claims are Barred by the Communications Decency Act ................................................................................ 6

        (a)  Facebook is an Interactive Computer Service Provider ................... 7

        (b)  Plaintiffs' Causes of Action Treat Facebook as a Publisher ............. 8

        (c)  The Content on FAN's Profile Page was Provided by FAN ............. 8

    B.  Plaintiffs Cannot Make Out a First Amendment Claim Because Facebook is Not a State Actor ................................................................................ 9

        1.  Facebook Is A Private Service ................................................................. 10

        2.  Plaintiffs Fail to Allege State Action ....................................................... 11

    C.  Plaintiffs Do Not Allege Facebook Engaged in Any Unlawful Conduct ............... 14

        1.  Plaintiffs Fail to State a Claim Under Title II ........................................... 14

        2.  Plaintiffs Fail to State a Claim Under California's Unruh Civil Rights Act ................................................................................................. 16

        3.  Plaintiffs' Contract Claims Fail as a Matter of Law ................................. 17

            (a)  Plaintiffs Fail to State a Breach of Contract Claim ........................ 17

1

**TABLE OF CONTENTS**
**Continued**

2

3
**Page**

4
            (b)     Plaintiffs Fail to State a Claim for Breach of Implied
                    Covenant of Good Faith ................................................................... 19

5

6
   D.     The Court Should Decline to Exercise Supplemental Jurisdiction Over
          Plaintiffs' State Law Claims .................................................................... 19

7
   E.     The Court Should Dismiss the Complaint With Prejudice ..................................... 20

8
V.     CONCLUSION .................................................................................................... 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Algarin v. New York City Dep't of Corr.*,
   No. 06 CIV. 508, 2006 WL 1379605 (S.D.N.Y. May 19, 2006) ...............................................14

*Alpha Delta Chi-Delta Chapter v. Reed*,
   648 F.3d 790 (9th Cir. 2011) ..................................................................................................14

*Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
   75 F.3d 1401 (9th Cir. 1996) ..................................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 6, passim

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ...............................................................................................7, 8

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...............................................................................................6, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................6

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) .....................................................................................................20

*Buza v. Yahoo!, Inc.*,
   No. C 11 4422, 2011 WL 5041174 (N.D. Cal. Oct. 24, 2011) ...........................................10, 12

*California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*,
   358 F.3d 661 (9th Cir. 2004) ..................................................................................................20

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...............................................................................7, 18

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ..................................................................................................6

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991) .................................................................................................................14

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
   948 F. Supp. 436 (E.D. Pa. 1996) ...........................................................................................13

*DeGrassi v. City of Glendora*,
   207 F.3d 636 (9th Cir.2000).....................................................................................................13

-iii-

MOTION TO DISMISS COMPLAINT

**TABLE OF AUTHORITIES**
Continued

Page

*Dietrich v. John Ascuaga's Nugget,*
    548 F.3d 892 (9th Cir. 2008)...............................................................................13

*Drogin v. Yahoo,*
    No. C 09-1368, 2009 WL 1393248 (N.D. Cal. May 14, 2009) ...............................12

*Evans v. Newton,*
    382 U.S. 296 (1966) ...............................................................................................13

*Everett-Dicko v. Ogden Entertainment Servs., Inc.,*
    36 F. App'x 245 (9th Cir. 2002)............................................................................13

*Fair Hous. Council of San Fernando Valley v. Roommates.com,*
    LLC, 521 F.3d 1157 (9th Cir. 2008) (en banc) .............................................7, 8, 20

*Fehrenbach v. Zeldin,*
    No. 17-CV-5282, 2018 WL 4242452......................................................................12

*Fields v. Twitter, Inc.,*
    217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018).............8

*Franklin v. Fox,*
    312 F.3d 423, 445 (9th Cir. 2002) .........................................................................13

*Freedom Watch, Inc. v. Google, Inc.,*
    No. 1:18-cv-02030, 2019 WL 1201549 (D.D.C. Mar. 14, 2019) ...................9, 10, 12

*Goddard v. Google, Inc.,*
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ..................................................................7

*Green v. Am. Online (AOL),*
    318 F.3d 465 (3d Cir. 2003)............................................................................11, 12

*Howard v. Am. Online Inc.,*
    208 F.3d 741 (9th Cir. 2000).................................................................................12

*Kimzey v. Yelp! Inc.,*
    836 F.3d 1263 (9th Cir. 2016).................................................................................7

*Kindersmart.com LLC v. Google, Inc.,*
    No. C 06-2057, 2006 WL 3246596 (N.D. Cal. July 13, 2006) ...............................12

*Kiser v. Kamdar,*
    831 F.3d 784 (6th Cir. 2016).................................................................................11

**TABLE OF AUTHORITIES**
Continued

Page

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ............................................................................7

*Langdon v. Google, Inc.*,
   474 F. Supp. 2d 622 (D. Del. 2007) .....................................................................12

*Lebron v. Nat'l Railroad Passenger Corp.*,
   513 U.S. 374 (1995) .............................................................................................9

*Lee v. Katz*,
   276 F.3d 550 (9th Cir. 2002).........................................................................9, 11

*Lloyd Corp. v. Tanner*,
   407 U.S. 551 (1972) ...........................................................................................10

*Lugar v. Edmondson Oil Co., Inc.*,
   457 U.S. 922 (1982) ...........................................................................................11

*McKinney v. Herald News*,
   , No. 08-3622, 2008 WL 4601758 (D.N.J. Oct. 15, 2008).........................................12

*Miron v. Hermalife Int'l, Inc.*,
   11 F. Appx. 927 (9th Cir. 2001)...................................................................17, 19

*Murawski v. Pataki*,
   514 F. Supp. 2d 577 (S.D.N.Y. 2007) .................................................................12

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001)................................................................................6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com Inc.*,
   591 F.3d 250 (4th Cir. 2009)..........................................................................7, 20

*Noah v. Time Warner, Inc.*,
   261 F. Supp. 2d 532 (E.D. Va. 2003)...............................................................12, 15

*Nyabwa v. Facebook*,
   No. 2:17-CV-24, 2018 WL 585467 (S.D. Tex. Jan. 26, 2018) ..............................12

*Ohno v. Yasuma*,
   723 F.3d 982 (9th Cir. 2013).........................................................................11, 13

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007)...............................................................................7

-v-

MOTION TO DISMISS COMPLAINT

**TABLE OF AUTHORITIES**
Continued

Page

*Prager Univ. v. Google LLC*,
  No. 17-CV-06064, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ...............................10, 11, 12

*Redden v. The Women's Ctr. of San Joaquin Cty.*,
  No. C 05-03099, 2006 WL 132088 (N.D. Cal. Jan. 17, 2006) ....................................................9

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982) ................................................................................................................11

*San Francisco Arts & Athletics v. U.S. Olympic Cmte.*,
  483 U.S. 522 (1987) ................................................................................................................14

*Shulman v. Facebook.com*,
  No. 17-764, 2017 WL 5129885 (D.N.J. 2017) ...................................................................9, 12

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017).........7, 8, 9, 20

*Smith v. Pride Mobility Prod. Corp.*,
  No. 16-cv-04411, 2016 WL 6393549 (N.D. Cal. Oct. 28, 2016).............................................15

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999)...................................................................................................10

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2012)..................................................................................................11

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ................................................................................................................19

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000)..................................................................................................15

*Wren v. Sletten Const. Co.*,
  654 F.2d 529 (9th Cir. 1981)....................................................................................................20

*Wright v. Incline Vill. Gen. Improvement Dist.*,
  665 F.3d 1128 (9th Cir. 2011)..................................................................................................10

*Young v. Facebook*,
  No. 5:10-CV-03579, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)...............................9, 18, 19

*Young v. Facebook, Inc.*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...............................................................................15, 17

MOTION TO DISMISS COMPLAINT

## TABLE OF AUTHORITIES
### Continued

Page

**STATE CASES**

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.,*
2 Cal.4th 342 (Cal. 1992) ...........................................................................................19

*City of Vernon v. City of Los Angeles,*
45 Cal.2d 710 (Cal. 1955) ...........................................................................................19

*Frances T. v. Village Green Owners Ass'n,*
42 Cal.3d 490 (Cal. 1986) ...........................................................................................17

*Javorsky v. W. Athletic Clubs, Inc.,*
242 Cal. App. 4th 1386 (2015) ....................................................................................16

*Sunrise Country Club Ass'n v. Proud,*
190 Cal. App. 3d 377 (1987) .......................................................................................16

**FEDERAL STATUTES**

28 U.S.C. § 1331 ...............................................................................................................19

28 U.S.C. § 1367 ...............................................................................................................20

42 U.S.C. § 2000a ..............................................................................................................14

42 U.S.C. § 2000a(b).................................................................................................14, 15

47 U.S.C. § 230 ...........................................................................................................6, 7, 8

47 U.S.C. § 230(c)(1) .................................................................................................2, 6, 8

47 U.S.C. § 230(f)(2) ...........................................................................................................7

**STATE STATUTES**

Cal. Civ. Code § 51(b) .......................................................................................................16

**RULES - OTHER**

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 6

Fed. R. Civ. Pro. 10(c) ......................................................................................................16

**FEDERAL REGULATIONS**

31 C.F.R. § 578.201 ...........................................................................................................19

**TABLE OF AUTHORITIES**
Continued

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amendment I ..................................................................................... 2, passim

U.S. Const. Amendment XIV ……………..……………………………………………………11

## NOTICE OF MOTION TO DISMISS

PLEASE TAKE NOTICE that on July 18, 2019, at 1:30 p.m., before the Honorable Lucy H. Koh in Courtroom 8 on the 4th floor of the above-entitled court located in San Jose, California, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss Plaintiffs' Complaint. This motion is made pursuant to Fed. R. Civ. P. 12(b)(6) and is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and papers on file, and such other matters as may be presented to this Court.

## STATEMENT OF RELIEF SOUGHT

Facebook seeks an order pursuant to Rule 12(b)(6) dismissing with prejudice the Complaint and each of its causes of action for failure to state a claim for relief.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Complaint states a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

## I.      INTRODUCTION

In this suit, Plaintiffs Federal Agency of News LLC ("FAN") and Evgeniy Lvovich Zubarev seek to hold Facebook liable for removing the FAN account and profile page from Facebook's platform.  They do so despite the fact that multiple authorities, including the Federal Bureau of Investigation, Central Intelligence Agency, National Security Agency, and the Department of Justice Office of Special Counsel, determined that FAN used its Facebook account to interfere unlawfully with the United States' 2016 presidential election.  Plaintiffs have no right, much less a constitutional one, to use Facebook in this way, and Facebook's decision to remove the FAN account and profile page was entirely lawful.  Plaintiffs' claims are meritless and should be dismissed.

Facebook operates an online platform that allows users to connect and share through its service.  Compl. ¶¶ 2–3, 7.  Around December 2014, Plaintiff FAN, a self-described Russian news organization, signed up for and operated a public profile page on Facebook's platform.  *Id.* ¶ 3.  As part of that process, FAN agreed to Facebook's Terms of Service, which prohibit using Facebook's products in a manner that is "unlawful, misleading, or fraudulent."  Compl. Ex. 2 at 3.  In the years

following, U.S. intelligence officials and the Special Counsel's Office made public findings that FAN and its principals had participated in the Russian Federation's effort to influence and interfere with the 2016 United States presidential election. Compl. ¶¶ 14, 36–37. They also determined that FAN and other related entities had used Facebook as part of this illegal scheme. *Id.* ¶ 10. Facebook subsequently removed FAN's account and profile page from its platform. *Id.* ¶ 4.

In their Complaint, FAN and Zubarev allege that by removing FAN's profile, Facebook violated the First Amendment, Title II of the Civil Rights Act, California's Unruh Civil Rights Act, and breached its contract with FAN as well as the implied covenant of good faith and fair dealing. *Id.* ¶¶ 59–117. Plaintiffs demand that this Court take over for intelligence officials and reopen the investigation into FAN's involvement in Russia's interference efforts. *Id.* ¶¶ A–E. None of Plaintiffs' claims survives scrutiny.

As an initial matter, aside from Plaintiffs' First Amendment claim, the Communications Decency Act ("CDA") preempts all of the claims in the Complaint. Congress enacted the CDA to protect and encourage exactly the type of core publishing conduct that Facebook engaged in here— removing illegal and harmful user-generated content from its platform. Because Plaintiffs' statutory and common law claims seek to hold Facebook liable for that conduct, Facebook is immune from liability. 47 U.S.C. § 230(c)(1).

Even if Plaintiffs' claims were not barred by the CDA, they would also fail on the merits. Plaintiffs' First Amendment claim fails because Facebook is, quite obviously, not a government actor. It is a private company. Nor do Plaintiffs' conclusory allegations regarding Facebook's interactions with the United States government come close to stating a claim that Facebook operated as a state actor subject to the First Amendment.

Plaintiffs' Title II claim fails because Facebook's platform is not a place of public accommodation, as Title II requires. And even if it were, the Complaint fails plausibly to allege that Facebook's decision to remove FAN's profile was motivated by discriminatory animus, rather than its determination that FAN used the platform unlawfully. Plaintiffs' Unruh Civil Rights Act claim fails for the same reason. Finally, Plaintiffs cannot make out their contract claims because nothing in Facebook's Terms of Service gave FAN a contractual right to continued use of the platform. In

fact, those Terms specifically explain that Facebook is entitled to remove profiles that it determines violate the law or its Terms.

Because Plaintiffs cannot prevail on their federal claims, this Court should decline to exercise supplemental jurisdiction over their state law civil rights and contract causes of action. And because all of Plaintiffs' claims fail as a matter of law, amendment to the Complaint would be futile. The Court should accordingly grant Facebook's motion to dismiss with prejudice.

## II.   BACKGROUND AND SUMMARY OF ALLEGATIONS[1]

Plaintiff Federal Agency of News LLC ("FAN") describes itself as a "corporation organized and existing under the laws of the Russian Federation" that "gathers, transmits and supplies domestic and international news reports and other publications of public interest." Compl. ¶ 2, 5. It purports to be "an independent, authentic and legitimate news agency," *id.* ¶¶ 26, 45, that is popular in Russia, *id.* ¶ 27. FAN's subscribers have historically accessed its content through the FAN website and its Facebook page. *Id.* ¶¶ 27–28. Plaintiff Evgeniy Lvovich Zubarev claims to be "the sole shareholder and General Director of FAN." *Id.* ¶ 6.

Facebook, Inc. is a Delaware corporation with its principle place of business in California. *Id.* ¶ 7.

Plaintiffs allege that, following the United States' presidential election in 2016, "Facebook began to shut down 'inauthentic' Facebook accounts . . . , claiming that their activity was similar or connected to that of Russian Facebook accounts . . . which were allegedly controlled by the Russia-based Internet Research Agency." *Id.* ¶ 10. FAN's account was among those removed. *Id.* ¶ 52.

### A.   Russian Interference in the United States Presidential Election

After the 2016 election, the United States intelligence officials determined that the Russia-based Internet Research Agency ("IRA") had utilized fake Facebook accounts to "promote the Russian government's interests in domestic and foreign policy." *Id.* ¶¶ 10–11. In a report, the U.S. intelligence community described the IRA as an agency of "professional trolls" whose likely financier is "a close Putin ally with ties to Russian intelligence." *Id.* ¶ 14.

---

[1] For purposes of this motion only, Facebook, as it must, accepts the factual allegations in Plaintiffs' complaint.

On October 19, 2018, an unsealed criminal complaint revealed that the FBI had discovered "Project Lakhta"—"a Russian interference operation in political and electoral systems targeting populations within the Russian Federation, and other countries, including the United States." *Id.* ¶ 36.  The complaint stated that "Project Lakhta" used inauthentic user names to create fictitious Facebook profiles, and published false and misleading news articles intended to influence U.S. and other elections. *Id.* ¶¶ 41, 43.

The criminal complaint demonstrated a significant connection between "Project Lakhta," the IRA, and FAN.  First, the complaint was filed in the prosecution of FAN's chief accountant, Elena Alekseevna Khusyaynova. *Id.* ¶¶ 36, 46–47.  Ms. Khusyaynova was charged with conspiring to defraud, and defrauding, the United States. *Id.* ¶ 36.  Second, the complaint specifically stated that the IRA and FAN were both entities within Project Lakhta. *Id.* ¶ 37.

In addition to the evidence included in the criminal complaint, the Special Counsel concluded that the founder and first General Director of FAN, Aleksandra Yurievna Krylova, was an employee of the IRA from September 2013 to November 2014. *Id.* ¶ 29.  Ms. Krylova was indicted in early 2018 on charges of having worked to "carry out the IRA's interference operations targeting the United States." *Id.* ¶ 34.  And from the time of FAN's incorporation in 2014 until mid-2015, FAN and the IRA were located in the same building in Saint Petersburg, Russia. *Id.* ¶ 32.

Plaintiffs purport, however, to have "no knowledge of 'Project Lakhta.'" *Id.* ¶ 38.  They also assert that FAN "has no relationship" with either Project Lakhta or the IRA, *id.* ¶ 39, and "no involvement" in any other organization "whose purpose it is to disseminate false or misleading information or to influence any elections," *id.* ¶ 40.  They deny having ever created a fictitious name or user account on Facebook. *Id.* ¶ 42.  And they deny having ever knowingly created a false or misleading news article, or having sought to interfere with the U.S. election. *Id.* ¶ 44.  Further, Plaintiffs allege that Ms. Krylova has not been affiliated with FAN in three years, and that Ms. Khusyaynova denies any involvement with Project Lakhta. *Id.* ¶¶ 35, 48.

**B.      Facebook's Cooperation With the United States' Investigation**

In response to the Government's findings regarding the improper use of Facebook, Plaintiffs allege that Facebook conducted a search for all advertisements placed on its platform that might

have originated in Russia.  *Id.* ¶ 16.  In September 2017, Facebook publicly announced that it had found advertising placed between June 2015 and May 2017 by approximately 470 inauthentic Facebook accounts.  *Id.* ¶ 15.  It shared the results of this search with United States authorities and Congress.  *Id.* ¶¶ 16–17.

Throughout 2017 and 2018, Facebook continued to work on its ongoing investigations into Russian interference, including by providing information to the Department of Justice and the Special Counsel's Office.  *Id.* ¶¶ 18–19.

## C.    Facebook's Removal of FAN's Profile

On or about April 3, 2018, Facebook removed the contents of FAN's profile and deleted its account from its platform.  *Id.* ¶ 52.  Facebook sent an e-mail to FAN, notifying it that Facebook had deleted its account for violating the platform's Terms of Service.  *Id.* ¶ 53.  In particular, the e-mail explained that "pages containing threats, offensive or indecent content are prohibited," and that "Pages aimed against another user or group of users, as well as Pages created by an unauthorized user will be deleted."  *Id.* ¶ 53; Exh. 3.

In several posts published the same day, Facebook explained that it had removed the affected accounts, including FAN's, "solely because they were controlled by the IRA—not based on the content."  *Id.* ¶ 20.  It elaborated that "[t]his particular set of pages and accounts was used to target people in Russia and people speaking Russian in neighboring countries . . . ," and that "some of the pages removed belong to Russian news organizations that [Facebook] had determined were controlled by the [IRA]."  *Id.* ¶ 21.  Plaintiffs allege that FAN has not violated the Terms of Service or any U.S. law.  *Id.* ¶ 54.

## D.    Procedural History

FAN and Zubarev filed this suit against Facebook in the United States District Court for the Northern District of California on November 20, 2018.  They contend that FAN did not violate Facebook's Terms of Service, and that Facebook removed FAN's account because of its affiliation with Russia.  *Id.* ¶¶ 70, 76–77, 83, 97, 98–99.  Plaintiffs assert claims under the First Amendment, Title II of the Civil Rights Act, California's Unruh Civil Rights Act, and for breach of contract and the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 59–117.

They seek injunctive relief preventing Facebook from blocking access to FAN's profile, as well as nominal, compensatory, and punitive damages.  Compl. ¶¶ A–E.

## III.    LEGAL STANDARDS

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  Though the Court accepts all allegations of material fact as true, the Court should not accept mere "labels and conclusions," nor a "formulaic recitation of the elements of a cause of action."  *Id.*

## IV.    ARGUMENT

### A.    Plaintiffs' Statutory and Common Law Claims are Barred by the Communications Decency Act

Plaintiffs seek to hold Facebook liable for its alleged decision to remove FAN's profile from its platform.  Compl. ¶ 91.  The Communications Decency Act ("CDA"), which prohibits claims seeking to impose liability on websites based on the publication or removal of third-party content, stands as an insurmountable obstacle to that effort.  This alone requires dismissal of all but Plaintiffs' First Amendment claim, without leave to amend.[3]

The CDA is designed at once "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material."  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).  To effectuate these goals, the statute provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The law bars liability "under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).  Section 230 "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the

---

[2] Internal citations and internal quotation marks are omitted throughout unless otherwise noted.

[3] Dismissal of Plaintiffs' statutory and common law claims on CDA grounds is also wholly consistent with dismissal of FAN's First Amendment claim.  Indeed, as the Ninth Circuit has held, in enacting the CDA, Congress "sought to further First Amendment . . . interests on the Internet," *Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003).

service.'"  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).  It also extends to federal claims.  *Fair Hous. Council of San Fernando Valley v. Roommates.com*, LLC, 521 F.3d 1157, 1169 n.24 (9th Cir. 2008) (en banc) (CDA extends to claims "under state or federal law").

Courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'"  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Roommates,* 521 F.3d at 1175).  Thus, courts routinely apply the CDA on the pleadings in dismissing complaints.  *See, e.g.*, *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009).

Under subsection (c)(1), CDA immunity attaches when (1) the defendant is "a provider or user of an interactive computer service," (2) "whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker," (3) "of information provided by another information content provider."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009).  Applying this standard, courts consistently have held that Facebook is protected by CDA immunity for claims related to third-party content.  *See, e.g., Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *Caraccioli v. Facebook*, Inc., 167 F. Supp. 3d 1056, 1065–66 (N.D. Cal. 2016); *Sikhs for Justice, "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095–96 (N.D. Cal. 2015), *affirmed sub nom.*, *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017).  In particular, they have held that the CDA prohibits holding Facebook liable for removing such third-party content.  *See id.* (dismissing similar Title II claim).  The same is true here.

(a)     *Facebook is an Interactive Computer Service Provider*

It is beyond dispute that Facebook, a social networking platform and website (Compl. ¶ 1, Facebook is a "web based platform"), is a provider of an interactive computer service.  *See, e.g., Klayman*, 753 F.3d at 1357 ("Facebook qualifies as an interactive computer service because it is a service that provides information to 'multiple users' by giving them 'computer access . . . to a computer server,' 47 U.S.C. § 230(f)(2)"); *Caraccioli*, 167 F. Supp. 3d at 1065 (same); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d at 1093 (same).

1

(b)     *Plaintiffs' Causes of Action Treat Facebook as a Publisher*

2   The second element of CDA immunity is also satisfied:  The FAC and each of its causes of

3   action make clear that Plaintiffs seek to hold Facebook liable as the publisher of FAN's profile.

4   Courts have held that under the CDA, "publication involves reviewing editing, and deciding

5   whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102.

6   Each of the Plaintiffs' claims relate to Facebook's removal of FAN's profile, and thus its decision

7   *not to publish* FAN's content.  *See id.*  "[I]t is immaterial whether [the] decision comes in the form

8   of deciding what to publish in the first place or what to remove among the published material." *Id.*

9   at 1102 n.8.  This is equally true of any claims premised on Facebook's deletion of Plaintiffs'

10  "accounts" (e.g., Compl. ¶¶ 98–99).  *See Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D.

11  Cal. 2016), aff'd, 881 F.3d 739 (9th Cir. 2018) ("Despite being aimed at blocking Twitter accounts

12  instead of particular tweets, plaintiffs' provision of accounts theory is still based on Twitter's

13  alleged violation of a 'duty . . . derive[d] from [its] status or conduct as a publisher.'").

14  Because "removing content is something publishers do," any attempt to "impose liability on

15  the basis of such conduct necessarily involves treating the liable party as a publisher of the content it

16  failed to remove." *Barnes*, 570 F.3d at 1103; *see also Roommates*, 521 F.3d at 1163 ("Congress

17  sought to immunize the removal of user-generated content."); *Sikhs for Justice*, 144 F. Supp. 3d at

18  1094 ("'any activity that can be boiled down to deciding whether to exclude material that third

19  parties seek to post online is perforce immune under section 230'" (quoting *Roommates*, 521 F.3d at

20  1170–71).).  All of Plaintiffs' claims seek to do exactly that, as they are all premised on Facebook's

21  removal of FAN's Facebook pages and account.  *See* Compl. ¶¶ 52-53, 73–74, 83-85, 98-99, 114–

22  15.  Plaintiffs' claims therefore treat Facebook as a "publisher or speaker" under the CDA.

23

(c)     *The Content on FAN's Profile Page was Provided by FAN*

24  It is likewise clear that all of the "information" at issue here—FAN's Facebook profile and

25  related postings and pages—were "provided by another information content provider," namely FAN

26  itself.  47 U.S.C. § 230(c)(1).  This prong requires that the interactive computer service provider is

27  not also the *content* provider for its service.  *See Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir.

28  2003).  Plaintiffs do not allege that Facebook created or contributed to the content on FAN's profile.

Instead, they expressly contend that FAN provided the content on its page. *See* Compl. ¶¶ 25–26 (explaining that FAN "publishes reports" and uses Facebook to "disseminate news, primarily of local interest, throughout the Russian Federation"). As this Court held in dismissing a similar Title II claim under the CDA against Facebook, the "third-party content . . . created entirely by individuals or entities other than the interactive computer service provider" is precisely the type of activity to which CDA immunity attaches. *Sikhs for Justice*, 144 F. Supp. 3d at 1093–94.

### B. Plaintiffs Cannot Make Out a First Amendment Claim Because Facebook is Not a State Actor

To make out a First Amendment claim, a plaintiff must allege a deprivation of his constitutional rights by a person acting under color of law. *See Lee v. Katz*, 276 F.3d 550, 553 (9th Cir. 2002). "It is . . . undisputed that the First Amendment of the United States Constitution only applies to government actors; it does not apply to private corporations or persons." *Redden v. The Women's Ctr. of San Joaquin Cty.*, No. C 05-03099 CRB, 2006 WL 132088, at *1 (N.D. Cal. Jan. 17, 2006). For this reason, attempts to treat Facebook—a private corporation—as subject to the First Amendment consistently have failed. *See Freedom Watch, Inc. v. Google, Inc.*, No. 1:18-cv-02030, 2019 WL 1201549 at *6–*7 (D.D.C. Mar. 14, 2019); *Young v. Facebook*, No. 5:10-CV-03579-JF-PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010); *Shulman v. Facebook.com*, No. 17-764, 2017 WL 5129885, at *4 (D.N.J. 2017) (collecting cases). Nonetheless, Plaintiffs allege that by deleting FAN's profile, Facebook engaged in "content based restrictions of free speech," and "violated FAN's First Amendment rights." Compl. ¶¶ 73, 75. Just as in prior cases, Facebook did not act under color of law when it removed FAN's profile, and its action is therefore not subject to constitutional scrutiny.

To begin, Plaintiffs' own Complaint demonstrates that Facebook is a private corporation rather than a government actor. Compl. ¶ 7 ("Defendant Facebook, Inc. is a corporation organized and existing under the laws of the State of Delaware.").[4] Because there is a "presumption that

---

[4] Though a private corporation can be treated as a government actor if it was specifically created by the government for the furtherance of government objections and the government retains permanent authority to appoint a majority of its board, *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399–400 (1995), Plaintiffs do not allege that any of those criteria is true of Facebook.

private conduct does not constitute government action," *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999), absent the existence of some exceptional circumstance, this alone precludes Plaintiffs' claim.  Plaintiffs attempt to overcome this high barrier by making a number of cursory allegations about Facebook's status and interactions with the United States government.  *See* Compl. ¶¶ 60–67.  But these mere legal conclusions, unsupported by factual allegations, cannot be credited and do not provide a basis for treating Facebook as a state actor. *Iqbal*, 556 U.S. at 678.

### 1.     Facebook Is A Private Service

Plaintiffs first suggest that Facebook is a state actor because it is a "community" and imposes "punishment" in the form of removing persons from the community.  Compl. ¶¶ 63–65.  This contention has no basis in law.  As noted, Plaintiffs allege that Facebook is a private corporation rather than a government actor, Compl. ¶ 7.  It is well recognized that the "public does not generally have a First Amendment right to access private property for expression." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1137 (9th Cir. 2011).  "Nor does property lose its private character merely because the public is generally invited to use it for designated purposes." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972).  Plaintiffs cannot avoid application of these straightforward principles by characterizing Facebook as a "community."  Numerous courts, including this Court, have uniformly rejected the proposition that privately-owned Internet companies become state actors because they permit members of the public to utilize their platforms and engage in expressive activity.  *See, e.g.*, *Freedom Watch*, 2019 WL 1201594, at *6; *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) ("[T]his Court is not convinced that *Marsh* can be extended to support Plaintiff's contention that Defendants should be treated as state actors subject to First Amendment scrutiny merely because they hold out and operate their private property as a forum for expression of diverse points of view."); *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003); *Buza v. Yahoo!, Inc.*, No. C 11 4422 RS, 2011 WL 5041174, at *1 (N.D. Cal. Oct. 24, 2011).[5]  The same is true here.

---

[5] Even if Facebook could even conceptually be described as a government, which it cannot, it would not be bound by the Free Speech Clause. That Clause states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.  It applies only to the federal government and—through incorporation under the Fourteenth Amendment—the states, along with those entities

## 2.    Plaintiffs Fail to Allege State Action

Plaintiffs next suggest that Facebook's removal of FAN's profile can be treated as an act of the U.S. government.  Compl. ¶¶ 66–67.  Again, there is no merit to this assertion.  "The Supreme Court has articulated four tests for determining whether a [private entity's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012).  Plaintiffs do not allege facts sufficient to satisfy any of these tests.[6]

*First,* by removing FAN's profile, Facebook did not engage in a "public function."  To satisfy the public function test, "the function at issue must be both traditionally and exclusively governmental."  *Lee*, 276 F.3d at 554.  But in moderating its platform, Facebook acted as the private owner of that property.  Facebook determined that FAN's content violated the terms that FAN agreed to abide by in creating an account, and it made a decision not to permit FAN to use its property any longer.  Deciding who is permitted to use one's own property is not a public function that is "traditionally the exclusive prerogative of the State."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 839–43 (1982) (emphasis in original).

Plaintiffs assert that "[t]he internet is a public forum," Compl. ¶ 60, and regulation of a traditionally public forum has been deemed a "public function," *Lee*, 276 F.3d at 554–55.  Courts, including this one, however, have rejected the notion that Internet companies, including Facebook, are "public forums" *for purposes of the First Amendment.  See, e.g., Prager*, 2018 WL 1471939, at *8 (rejecting argument that "*private social media corporations* like YouTube are state actors that must regulate the content of their websites according to the strictures of the First Amendment" under

---

to whom the state has delegated its authority.  *See Kiser v. Kamdar*, 831 F.3d 784, 790–91 (6th Cir. 2016).  Incorporation, and thus the reach of the Free Speech Clause, does not extend to "communities" generally, which are not covered by the Fourteenth Amendment's Due Process Clause.  *See* U.S. Const. amend. XIV.

[6] Plaintiffs also cannot satisfy the additional element of the state action requirement demanding that "the deprivation" they complain of "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Facebook's ability to "deprive" FAN of its profile was caused by Facebook's ownership of the platform—not exercise of any state-imposed privilege or rule.  This is yet another basis to reject Plaintiffs' First Amendment claim.  *See Ohno v. Yasuma*, 723 F.3d 984, 994–95 (9th Cir. 2013).

public forum analysis); *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, *1 (S.D. Tex. Jan. 26, 2018) ("Although the Court recognized in *Packingham* . . . that social media sites like Facebook and Twitter have become the equivalent of a public forum for sharing ideas and commentary, the Court did not declare a cause of action against a private entity such as Facebook for a violation of the free speech rights protected by the First Amendment."); *Shulman*, 2017 WL 5129885, *4 (same). As this Court held in *Prager*, "private entities who created their own . . . social media website[s] and make decisions about whether and how to regulate content that has been uploaded on th[ose] website[s]" have not "engaged in one of the 'very few' public functions that were traditionally 'exclusively reserved to the state.'"  2018 WL 1471939, at *8.

Further, deeming Facebook and other private online services public fora for First Amendment purposes could have severe consequences, including chilling Internet speech and innovation.  And it would be unadministrable for both companies and courts tasked with adjudicating the multitudes of constitutional claims that would arise from content moderation. *Freedom Watch*, 2019 WL 1201549, at *6  (rejecting argument that various Internet companies, including Facebook, are "quasi-state actors because they regulate their public platforms, thereby regulating free speech within their public forums"); *Buza*, 2011 WL 5041174, at *1; *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631–32 (D. Del. 2007) ("Plaintiff's analogy of [Google and other] Defendants' private networks to shopping centers and his position that since they are open to the public they become public forums is not supported by case law."); *Kindersmart.com LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2006 WL 3246596, at *6 (N.D. Cal. July 13, 2006) (rejecting claim that Google is a state actor because the "Supreme Court has made clear that merely opening a space to the public does not dedicate the space to public use"); *Howard v. Am. Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (rejecting claim that "AOL is a 'quasi-public utility' that 'involv[es] a public trust'"); *Green*, 318 F.3d at 472 (same).[7]

---

[7] *See also, e.g.*, *Fehrenbach v. Zeldin*, No. 17-CV-5282, 2018 WL 4242452, at *3 (E.D.N.Y. Aug. 6, 2018); *Drogin v. Yahoo*, No. C 09-1368, 2009 WL 1393248, at *1 (N.D. Cal. May 14, 2009); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 588 (S.D.N.Y. 2007); *McKinney v. Herald News*, No. 08-3622, 2008 WL 4601758, at *3 (D.N.J. Oct. 15, 2008); *Noah v. Time Warner, Inc.*, 261 F. Supp. 2d

*Second*, Plaintiffs do not allege any facts suggesting that the United States government was involved in Facebook's decision to remove FAN's profile such that Facebook's action can be treated as "joint action" with the state.  "Joint action exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party."  *Ohno v. Yasuma*, 723 F.3d 982, 996 (9th Cir. 2013).  The Ninth Circuit has explained that this test has "largely subsume[d]" the state compulsion and government nexus tests because all three "address the degree to which the state is intertwined with the private actor or action."  *Ohno*, 723 F.3d at 995 n.13.  Plaintiffs' allegations are insufficient under any of these inquiries.

At most, Plaintiffs assert that Facebook has cooperated with the United States' investigation into how Facebook's platform was used in an illegal conspiracy, and that some Facebook employees previously worked for the government.  Compl. ¶¶ 10–23, 67.  This hardly establishes that the government "has so far insinuated itself into a position of interdependence with the [non-governmental party] that it must be recognized as a joint participant in the challenged activity."  *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).  Nor is it anywhere near the significant "structural overlap between private and public [actors]" that constitutes the "pervasive entwinement," necessary to attribute private action to the government.  *Everett-Dicko v. Ogden Entm't Servs., Inc.*, 36 F. App'x 245, 248–49 (9th Cir. 2002); *see also Evans v. Newton*, 382 U.S. 296, 299 (1966).  As the Ninth Circuit has confirmed, alleging that the government and private entity "simply work together" is insufficient.  *Everett-Dicko*, 36 F. App'x at 249.

While Plaintiffs claim that Facebook acts "at the behest of the government of the United States in its attempts to regulate free speech," Compl. ¶ 66, they do not provide any factual support for that allegation.  As courts have made clear, a "bare allegation" of "joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [Defendants] acted under color of state law or authority."  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (quoting *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000)).  Indeed, an allegation that a party "acted 'at the behest of . . . [a state actor] and possibly other state actors'" is

---

532, 546 (E.D. Va. 2003); *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 440–45 (E.D. Pa. 1996).

MOTION TO DISMISS COMPLAINT

"far too conclusory to survive a motion to dismiss." *Algarin v. N.Y.C. Dep't of Corr.*, No. 06 CIV. 508 (JSR), 2006 WL 1379605, at *1 (S.D.N.Y. May 19, 2006); *see also Iqbal*, 556 U.S. at 679.

Plaintiffs merely suggest that Facebook cooperated with a government investigation and took account of government agencies' findings; neither of which demonstrates that Facebook's decision "must in law be deemed to be that of the [government]." *Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1411 (9th Cir. 1996) (quoting *San Francisco Arts & Athletics v. U.S. Olympic Cmte.*, 483 U.S. 522, 546 (1987)).  Because Facebook cannot be treated as a state actor, Plaintiffs' claim must be dismissed.

Finally, even if Facebook were a state actor (it is not), removing FAN's profile would have been consistent with the First Amendment.  The Terms of Service's prohibition on using Facebook for illegal aims is a reasonable, content- and viewpoint-neutral rule of general applicability.  *See Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 797–98, 803 (9th Cir. 2011).  Enforcement of that rule does "not offend the First Amendment simply because  . . . [it had] incidental effects on [FAN's] ability to" engage in protected activity.  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991).

### C.      Plaintiffs Do Not Allege Facebook Engaged in Any Unlawful Conduct

Even if Facebook were not immune from liability under the CDA, all of Plaintiffs' statutory and common law claims would also fail on the merits.

### 1.      Plaintiffs Fail to State a Claim Under Title II

Title II prohibits discrimination in a "place of public accommodation" based on, *inter alia*, national origin.  42 U.S.C. § 2000a.  Plaintiffs assert that Facebook violated Title II by "depriving FAN and its members of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Facebook's internet-based social networking service."  Compl. ¶ 84.

At the outset, Title II does not apply to Facebook because Facebook is not a "public accommodation" within the meaning of the statute.  The Act defines public accommodation exclusively by reference to physical establishments.  *Id.* § 2000a(b).  And courts consistently have declined to expand the meaning of that term to include online platforms, including Facebook.  *See*

1   *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540–41 (E.D. Va. 2003) (AOL chatrooms not

2   places of public accommodation); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114

3   (9th Cir. 2000) ("public accommodation" limited to physical establishments under ADA); *Young v.*

4   *Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (Facebook not a place of public

5   accommodation under the ADA).

6   Plaintiffs' mere assertion that Facebook "operates a place of public accommodation as a

7   social networking service that is internet-based but with physical headquarters . . . in the State of

8   California, Compl. ¶ 80, cannot overcome this precedent. First, Plaintiffs do not, and cannot, allege

9   that Facebook's *physical* corporate headquarters—which are private and not open to the public—are

10  an accommodation that "serve[s] the public," 42 U.S.C. § 2000a(b). Second, Plaintiffs do not, and

11  cannot, allege that Facebook denied FAN access to those facilities by deleting its profile page.

12  Thus, even if the building housing Facebook's corporate headquarters were a public

13  accommodation, which it is not, removing FAN's profile page would not constitute denial of the

14  "full and equal enjoyment" of *that* accommodation. Courts require a "nexus" between the good or

15  service that the plaintiff is denied and the exclusion from the actual physical place. *See Weyer*, 198

16  F.3d at 1114-15; *see also Smith v. Pride Mobility Prod. Corp.*, No. 16-cv-04411, 2016 WL

17  6393549, at *5 (N.D. Cal. Oct. 28, 2016).

18  In any event, Plaintiffs do not adequately allege that Facebook discriminated against them on

19  the basis of national origin or any other protected characteristic. They make the conclusory

20  allegation that Facebook "deprive[d] [them] with discrimination and segregation on the ground of

21  national origin." Compl. ¶ 85. But this type of "legal conclusion couched as a factual allegation" is

22  insufficient to survive a motion to dismiss. *Iqbal,* 556 U.S. at 678. Plaintiffs assert that Facebook

23  acted "[d]espite overwhelming evidence that it was wrong in its conclusions" that FAN violated its

24  Terms of Service, Compl. ¶ 55, but the Complaint nowhere provides or explains any such evidence.

25  It merely denies, without explanation, various government agencies' findings that FAN and its

26  principals engaged in unlawful activities. *See id.* ¶¶ 35, 38–40, 42, 44, 48. Even if credited, those

27  allegations would not support an inference that, when it decided to remove FAN's profile, Facebook

28  relied on anything other than the plentiful, persuasive evidence that FAN violated the law and the

Terms of Service, as the Complaint *itself* shows.[8]  Because Plaintiffs provide no plausible factual allegations suggesting that Facebook had a discriminatory purpose, their Title II claim must be dismissed.  *See Iqbal*, 556 U.S. at 679 (the "mere possibility of misconduct" is insufficient).

### 2. Plaintiffs Fail to State a Claim Under California's Unruh Civil Rights Act

For the same reason, Plaintiffs also fail to allege facts indicating any conduct that violated the Unruh Act.  That state law guarantees "[a]ll persons within the jurisdiction of [California] . . . no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, [or] sexual orientation . . . full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  The Act "prohibits only unreasonable, arbitrary, or invidious discrimination, not differential treatment based on actual characteristic differences or differences in needs of users."  *Sunrise Country Club Ass'n v. Proud*, 190 Cal. App. 3d 377, 380–81 (1987). "Invidious discrimination is the treatment of individuals in a manner that is malicious, hostile, or damaging."  *Javorsky v. W. Athletic Clubs, Inc.*, 242 Cal. App. 4th 1386, 1404 (2015).

Plaintiffs allege Facebook violated the Act by "den[ying] access to Facebook internet connections and the Facebook 'community' based upon Russian nationality and/or Russian ethnicity."  Compl. ¶ 91.  They contend that "[t]he national origin and ethnicity of FAN, its owners and its subscribers were motivating factors behind Facebook's actions."  *Id.*  As explained with respect to Title II, however, Plaintiffs do not allege any facts that plausibly suggest that is the case. Indeed, the allegations in the Complaint make evident that the opposite is true—Facebook took the removal action not because of any nationality or ethnicity discrimination but rather because of evidence that FAN was involved in a conspiracy to use Facebook to interfere with the 2016 presidential election.  Compl. ¶¶ 29, 32, 34, 37.  Plaintiffs' insinuation that Facebook acted for any other purpose is completely speculative and cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at

---

[8] *See* Compl. ¶ 21 (citing Facebook blog post stating that "the pages and accounts [they] took down today were removed because they were controlled by the IRA, not based on the content they shared"); Ex. 3 (email from Facebook explaining that the FAN page was "deleted for violating our Terms of Service"); Fed. R. Civ. P. 10(c) (providing that pages attached to a complaint are part of the complaint for all purposes).

679.  Since removal for violation of federal law does and cannot constitute "invidious discrimination" under the Unruh Act, Plaintiffs have not made out their claim.

Similarly, Plaintiffs do not allege that Facebook's enforcement of its Terms of Service was anything but enforcement of a facially neutral policy.  "The California Supreme Court has concluded that the [Unruh] Act requires allegations of willful, affirmative misconduct, and that a plaintiff must allege more than the disparate impact of a facially neutral policy on a particular group." *Young v. Facebook, Inc.,* 790 F. Supp. 2d at 1116.  As noted, Plaintiffs' allegations show that substantial evidence exists that FAN violated the Terms of Service, and that Facebook removed FAN's  account and profile page on that basis.  Because Plaintiffs "do[] not allege that Facebook treated [them] differently *because* of" their nationality, they have not alleged any invidious discrimination under the Unruh Act.  *Id.* (emphasis in original).

### 3.  Plaintiffs' Contract Claims Fail as a Matter of Law

Plaintiffs also have asserted claims under California contract law. They claim that Facebook's Terms of Service created a contract between the parties governing FAN's use of Facebook's platform.  Compl. ¶ 94.  They assert that, by removing FAN's profile "without a legitimate reason," Facebook breached that contract as well as the implied covenant of good faith and fair dealing.  Compl. ¶¶ 98, 106.  Both claims fail for the same reason:  Plaintiffs have not, and cannot, identify any provision of the Terms of Service obliging Facebook to permit them to use its platform.  And if that were not enough, the Complaint demonstrates that Facebook had a plainly legitimate reason for removing FAN's profile.

#### (a)  *Plaintiffs Fail to State a Breach of Contract Claim*

Under California law, in an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached. *Miron v. Herbalife Int'l, Inc.*, 11 F. Appx. 927, 929 (9th Cir. 2001); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal.3d 490, 512–13 (1986).  Yet Plaintiffs have not identified any provision of the Terms of Service entitling them—or any user—to continued use of Facebook after Facebook has determined that they violated the Terms of Service.  In fact, the Complaint merely asserts that "FAN and Facebook had a contract," and that "Facebook was obligated to provide

access to Facebook's platform in exchange for FAN properly completing the application and abiding by the Terms of Service." Compl. ¶¶ 94–95. It fails to point to any specific provision of the Terms of Service, much less explain how that provision created such an obligation.

This is unsurprising, as nothing in Facebook's Terms of Service entitles FAN to use its platform under *any* circumstances. The Terms state that Facebook "provide[s] the products and services described." Ex. 2 at 1. They then state that "[i]n exchange, we need you to make [certain] commitments," including "agree[ing] not to . . . use our products to do or share anything that breaches these Terms, our Community Standards and other Terms and Policies . . . that is unlawful, misleading, discriminatory, or fraudulent." *Id.* at 2. These terms limit the ways in which users are entitled to use Facebook's products and services, but they do not guarantee or otherwise promise continued access to those products and services if the user fails to comply. Indeed, courts interpreting a prior version of the Terms of Service concluded that the terms "do not create affirmative obligations" on Facebook. *See Caraccioli*, 167 F. Supp. 3d at 1064; *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3. The current Terms of Service are materially unchanged in that respect. It is accordingly irrelevant that Plaintiffs claim that FAN "compl[ied] with all applicable terms of service" and "[a]t no time . . . violate[d] the terms of the contract." Compl. ¶¶ 96–97.

Moreover, even if the Terms of Service created an entitlement of some sort, actual violation of those terms is not necessary to permit Facebook to remove a user's profile. At most, the Terms of Service provide advance notice to users that Facebook may remove user profiles when it determines that a violation occurred. *See* Ex. 2 at 2–3 ("You therefore agree not to engage in the conduct described below . . . ."); ("We can remove content that you share in breach of these provisions and, if applicable, we may take action against your account, for the reasons described below."). And as explained, Plaintiffs provide no factual basis from which it can be inferred that Facebook acted for any reason other than having determined that FAN violated the Terms of Service. To be sure, they include a conclusory allegation that "Facebook knew FAN had no relationship with the IRA," Compl. ¶ 99, but they provide no factual support for this claim. Nothing

in the Terms entitles Plaintiffs to challenge Facebook's determination that FAN violated its terms—especially given that, on the face of the Complaint, this determination was eminently reasonable.[9]

        (b)    *Plaintiffs Fail to State a Claim for Breach of Implied Covenant of Good Faith*

Plaintiffs' implied covenant of good faith claim fails for the same reasons. The implied covenant of good faith does not apply where "no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *Young v. Facebook Inc.*, 2010 WL 4269304, at * 4. As explained, Plaintiffs have failed to identify *any* such provision. Similarly, "a party cannot be held liable on a bad faith claim for doing what is expressly permitted in an agreement or what is within the parties' reasonable expectations." *Miron*, 11 F. App'x at 929 (citing *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992)). The contract's express terms permit Facebook to "remove content" and "take action against your account" if it includes content that "is unlawful, misleading, discriminatory or fraudulent." Ex. 2 at 3. In light of this provision, it was certainly within the parties' reasonable expectations that Facebook would be able to remove content and accounts that the United States government determined violated federal law. Again, Plaintiffs' allegation that "FAN did not violate the Terms of Service and terms of Community Standards as set by Facebook," Compl. ¶ 105, has no impact on this analysis.

**D.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

Although Plaintiffs' state law claims fail on the merits, it is not necessary for this Court to reach them. Where a district court has dismissed all claims over which it has original jurisdiction, it is appropriate to decline to exercise supplemental jurisdiction over any remaining state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Here, Plaintiffs assert that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction)

---

[9] Even if Facebook was contractually obligated to provide FAN with continued use of its products, the Department of the Treasury's decision to place FAN on the Office of Foreign Assets Control's Specially Designated Nationals List is an affirmative defense to Plaintiffs' contract claim. It is illegal for U.S. companies to engage in prohibited transactions, including providing services to entities on that list. 31 C.F.R. § 578.201. These sanctions mandate that Facebook prohibit FAN from using its platform. Facebook cannot be liable for failing to engage in illegal activity. *See City of Vernon v. City of Los Angeles*, 45 Cal. 2d 710, 719–21 (1955).

and 28 U.S.C. § 1367 (supplemental jurisdiction).  Compl. ¶ 8.  Accordingly, the Court has original jurisdiction over only Plaintiffs' federal claims under the First Amendment and Title II.  For the reasons discussed above, those claims fail as a matter of law.  As a result, "the proper exercise of discretion requires dismissal of the state claim[s]."  *Wren v. Sletten Const. Co.*, 654 F.2d 529, 536 (9th Cir. 1981); *see also Sikhs for Justice*, 144 F. Supp. 3d at 1096.

### E.      The Court Should Dismiss the Complaint With Prejudice

It is appropriate to dismiss Plaintiffs' Complaint with prejudice.  Courts are not required to grant leave to amend where amendment would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."); *Sikhs for Justice*, 144 F. Supp. at 1096.  Amendment would be futile here because all of Plaintiffs' claims fail as a matter of law.  *See California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673–74 (9th Cir. 2004) ("[F]utility includes the inevitability of a claim's defeat on summary judgment.").  There are no new factual allegations that Plaintiffs could plausibly include in an amended complaint that would cure the legal deficiencies previously identified.  And to the extent that Plaintiffs would simply add additional unsupported speculation of bad faith, such allegations would not affect the motion to dismiss analysis.  *Iqbal*, 556 U.S. at 679.

Courts have explained that dismissal with prejudice is particularly appropriate in cases like this one because the CDA must be interpreted to "protect[] websites not only from ultimate liability, but also from having to fight costly and protracted legal battles.'"  *Nemet Chevrolet, Ltd.*, 591 F.3d at 255 (quoting *Roommates,* 521 F.3d at 1175).  Because Facebook is immune from suit under the CDA from all but Plaintiffs' frivolous First Amendment claim, amendment of the Complaint would merely draw out the inevitable dismissal.

## V.      <u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiffs' Complaint without leave to amend.

1

DATED:  April 15, 2019

2

MUNGER, TOLLES & OLSON LLP
ROSEMARIE T. RING
JONATHAN H. BLAVIN

3

4

By:   */s/ Rosemarie T. Ring*

5

ROSEMARIE T. RING
Attorneys for Defendant Facebook, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28