ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL AGENCY OF NEWS LLC, and EVGENIY LVOVICH ZUBAREV, <br><br> Plaintiffs, <br><br> vs. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 5:18-cv-07041-LHK <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Judge:   Hon. Lucy H. Koh <br> Date:    January 9, 2020 <br> Time:    1:30 p.m. <br> Crtrm.:  8, 4th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION TO DISMISS ............................................................. 1

STATEMENT OF RELIEF SOUGHT .......................................................... 1

STATEMENT OF ISSUE TO BE DECIDED ............................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION ........... 1

I.      INTRODUCTION ............................................................................ 1

II.     BACKGROUND ............................................................................... 3

        A.      The Court Dismissed Plaintiffs' Initial Complaint ................. 4

        B.      Plaintiffs Filed An Amended Complaint With Minor Modifications ...... 5

III.    LEGAL STANDARD ....................................................................... 5

IV.     ARGUMENT ................................................................................... 6

        A.      None Of The Amendments Undermine Facebook's CDA Immunity To
                Plaintiffs' Statutory And Common Law Claims .................... 6

                1.      Plaintiffs' Single New Allegation Regarding The CDA Misses The
                        Mark ....................................................................... 6

                2.      All The Requisites Of CDA Immunity Remain Satisfied ........... 7

        B.      As Before, Plaintiffs' Statutory And Common Law Claims Also Fail On
                The Merits .......................................................................... 9

        C.      The Amended Complaint Fails To Cure Fundamental Defects In Plaintiffs'
                First Amendment Claim ....................................................... 11

                1.      A Bare Allegation That Facebook "Is A Public Forum" Fails To
                        Satisfy The Public Forum Test ...................................... 11

                2.      New Allegations Regarding Facebook's Cooperation With The
                        Government Fail To State A Plausible Claim Of Joint Action ........... 12

                        (a)     Facebook's Sharing Of Information ........................ 13

                        (b)     Information Received From Government In Connection
                                With "Partnership" ...................................... 13

                        (c)     "Conspiracy" To Deny Rights .............................. 17

        D.      The Court Should Decline To Exercise Supplemental Jurisdiction Over
                Plaintiffs' State Law Claims ................................................ 18

V.      CONCLUSION .............................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) ........................................................................................................15, 16

*Anderson v. Suiters*,
   499 F.3d 1228 (10th Cir. 2007) ...................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................5, 10, 12

*Azadpour v. Sun Microsystems, Inc.*,
   No. C06-03272 MJJ, 2007 WL 2141079 (N.D. Cal. July 23, 2007) .........................16

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ..................................................................................................15

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) ........................................................................................3

*Borrell v. Bloomsburg Univ.*,
   870 F.3d 154 (3d Cir. 2017) ......................................................................................16

*Brunette v. Humane Soc'y of Ventura Cty.*,
   294 F.3d 1205 (9th Cir. 2002)........................................................................11, 12, 18

*Burns v. County of King*,
   883 F.2d 819, 821 (9th Cir. 1989) .............................................................................17

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) .......................................................................9

*Darnaa, LLC v. Google, Inc.*,
   No. 15-cv-03221-RMW, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) ......................8

*Deeths v. Lucile Slater Packard Childrens Hosp. at Stanford*,
   No. 1:12-cv-02096-LJO, 2013 WL 6185175 (E.D. Cal. Nov. 26, 2013)....................13

*Dietrich v. John Ascuaga's Nugget*,
   548 F.3d 892 (9th Cir. 2008).....................................................................................17

MOTION TO DISMISS AMENDED COMPLAINT

**TABLE OF AUTHORITIES**
Continued

Page

*Ebeid v. Facebook, Inc.*,
No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ..............................2, 8, 10

*ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*,
355 F. Supp. 3d 785 (D. Minn. 2019) ...................................................................15

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
521 F.3d 1157 (9th Cir. 2008)...........................................................................8

*Farm Credit Servs. of Am. v. Am. State Bank*,
339 F.3d 764 (8th Cir. 2003) ............................................................................5

*Fonda v. Gray*,
707 F.2d 435 (9th Cir. 1983).............................................................................13

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) .........................................................................7

*Lancaster v. Alphabet Inc.*,
No. 15-cv-05299-HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016) .........................................8

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) ..................................................................................12

*Mathis v. Pac. Gas & Elec. Co.*,
75 F.3d 498 (9th Cir. 1996)..............................................................................12

*Miron v. Herbalife Int'l, Inc.*,
11 F. App'x 927 (9th Cir. 2001).......................................................................2, 9

*Prager Univ. v. Google LLC*,
No. 17-cv-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ....................................12

*Riggs v. MySpace, Inc.*,
444 F. App'x 986 (9th Cir. 2011)........................................................................8

*Roberts v. AT&T Mobility LLC*,
877 F.3d 833 (9th Cir. 2017)............................................................................15

*Sanders v. Long Island Newsday*,
No. 09-cv-2393 (JFB)(ETB), 2010 WL 3419659 (E.D.N.Y. Aug. 27, 2010) ...........................17

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015), aff'd, 697 F. App'x 526 (9th Cir. 2017) ........ 2, passim

**TABLE OF AUTHORITIES**
Continued

Page

*Sing v. Warren*,
 No. 2:16-cv-2024-MCE-KJN-PS, 2016 WL 10644092 (E.D. Cal. Dec. 7, 2016)....................17

*Sutton v. Providence St. Joseph Med. Ctr.*,
 192 F.3d 826 (9th Cir. 1999).........................................................................................11

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
 546 F.3d 255 (2d Cir. 2008).........................................................................................15

*United Mine Workers of Am. v. Gibbs*,
 383 U.S. 715 (1966) ................................................................................................3, 18

*United States v. Int'l Bhd. Of Teamsters*,
 988 F. Supp. 759 (S.D.N.Y. 1997), aff'd, 156 F.3d 354 (2d Cir. 1998) .........................3, 16, 17

*United States v. McKeon*,
 738 F.2d 26 (2d Cir. 1984)...........................................................................................15

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
 865 F.2d 1539 (9th Cir. 1989)......................................................................................17

*Watson v. Rogers*,
 Civ. No. 07-2165 (JAG), 2008 WL 2224812 (D.N.J. May 27, 2008) ...........................16

*Wren v. Sletten Constr. Co.*,
 654 F.2d 529 (9th Cir. 1981).....................................................................................3, 18

*Young v. Facebook, Inc.*,
 790 F. Supp. 2d 1110 (N.D. Cal. 2011) .......................................................................2, 10

*Young v. Facebook, Inc.*,
 No. 5:10-cv-03579, 2010 WL 4269304-JF/PVT (N.D. Cal. Oct. 25, 2010).................9

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009).........................................................................................3

STATE CASES

*Frances T. v. Village Green Owners Ass'n*,
 42 Cal. 3d 490 (1986)...............................................................................................2, 9

FEDERAL STATUTES

28 U.S.C. § 1331 ...........................................................................................................18

# TABLE OF AUTHORITIES
## Continued

**Page**

47 U.S.C. § 230
  Communications Decency Act ............................................................................... 1, passim

47 U.S.C. § 230(c)(1) ............................................................................................ 2, passim

47 U.S.C. § 230(c)(2) ...................................................................................................2, 6, 7

**STATE STATUTES**

Cal. Civ. Code § 51
  California Unruh Civil Rights Act ..............................................................................1, 2, 4, 9

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 5

1

<u>NOTICE OF MOTION TO DISMISS</u>

2     PLEASE TAKE NOTICE that on January 9, 2020, at 1:30 p.m., before the Honorable

3   Lucy H. Koh in Courtroom 8 on the 4th floor of the above-entitled court located in San Jose,

4   California, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss

5   Plaintiffs' Amended Complaint ("FAC").  This motion is made pursuant to Fed. R. Civ. P.

6   12(b)(6) and is based on the Notice of Motion and Motion, the Memorandum of Points and

7   Authorities, all pleadings and papers on file, and such other matters as may be presented to this

8   Court.

9

<u>STATEMENT OF RELIEF SOUGHT</u>

10     Facebook seeks an order pursuant to Rule 12(b)(6) dismissing with prejudice the Amended

11   Complaint and each of its causes of action for failure to state a claim for relief.

12

<u>STATEMENT OF ISSUE TO BE DECIDED</u>

13     Whether the Amended Complaint states a claim upon which relief can be granted.

14

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION</u>

15   **I.     INTRODUCTION**

16     Plaintiffs Federal Agency of News LLC ("FAN") and Evgeniy Lvovich Zubarev filed an

17   amended complaint which, like the first, asserts various claims arising from Facebook's decision to

18   remove FAN's account and profile pages from Facebook's platform after multiple authorities,

19   including the Office of Special Counsel, determined that Plaintiffs were part of a Russian operation

20   to spread misinformation on Facebook and interfere in the 2016 presidential election.  For all the

21   reasons the Court correctly held that the initial complaint failed to state a claim, the FAC likewise

22   fails and should be dismissed with prejudice.  *See* Order Granting Motion to Dismiss Without

23   Prejudice ("Order"), ECF No. 33.

24     The Communications Decency Act, 47 U.S.C. § 230 ("CDA") continues to immunize

25   Facebook from Plaintiffs' statutory and common law claims (Count 2, for violation of the Unruh

26   Civil Rights Act; Count 3, for breach of contract; and Counts 4 & 5, for breach of the implied

27   covenant of good faith and fair dealing).  All of these claims "are based on Facebook's decision to

28   remove FAN's account, postings, and content" and therefore are barred by the CDA.  Order 10; *see*

*also Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017).  Plaintiffs' addition of a single new allegation that FAN "at no point published materials that were obscene, indecent, or were otherwise of a sexual nature" misses the mark, because the relevant subsection of the CDA applies irrespective of the nature of the content that Facebook removed.  *See* 47 U.S.C. § 230(c)(1); Order 12 ("The statutory text provides that no 'provider or user of an interactive computer service shall be treated as the publisher or speaker of *any information* provided by another information content provider.'" (emphasis in original)).  The CDA's grant of immunity with respect to restricting access to "obscene" or "otherwise objectionable" material concerns a *separate* provision of the CDA that is not at issue here.  *Cf.* 47 U.S.C. § 230(c)(2).  The CDA bars Plaintiffs' statutory and common law claims.

Plaintiffs' non-constitutional claims also fail on the merits for the reasons set forth in Facebook's initial Motion to Dismiss.  In particular, the new allegations do not cure Plaintiffs' failure to identify a specific provision allegedly breached for purposes of their breach of contract and breach of implied covenant claims.  *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 512-13 (1986).  Nor do such allegations establish under the Unruh Act that Plaintiffs' national origin and ethnicity were the reasons behind Facebook's actions; to the contrary, they indicate that Facebook removed FAN's pages because it was involved in a conspiracy to use Facebook to interfere with the 2016 presidential election in violation of Facebook's terms.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011); *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019).

With respect to Plaintiffs' First Amendment claim, this Court correctly concluded in its prior Order that the claim necessarily fails because Facebook's deletion of FAN's profile and postings is "private conduct that does not constitute governmental action" subject to First Amendment strictures.  Order 14.  It also correctly concluded, after conducting a thorough analysis, that Plaintiffs failed plausibly to allege state action under the public function and joint action tests.  *Id.* 21-22.  None of the newly added allegations in the FAC alter that conclusion.  The

new allegations are conclusory, redundant of allegations in the initial complaint, and otherwise

legally insufficient to establish state action.  In particular, Plaintiffs' new allegations regarding

Facebook's alleged "partnership" and work with the U.S. government to investigate interference,

such as through the sharing of "tips," in the *2018* mid-term election post-date and lack any

connection to Facebook's decision to remove *FAN*'s profile following the *2016* presidential

election.  And, in any event, even if such allegations related to FAN, they do not show the degree

of state participation necessary to show "joint action."  Under settled law, working with the

government through the sharing of "tips" or other information does not rise to the level of joint

action.  *See, e.g.*, *United States v. Int'l Bhd. Of Teamsters*, 988 F. Supp. 759, 764 (S.D.N.Y. 1997),

*aff'd*, 156 F.3d 354 (2d Cir. 1998).

To the extent the Court dismisses the First Amendment claim, it may also exercise its

discretion to decline to exercise supplemental jurisdiction over the remaining claims.  *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Wren v. Sletten Constr. Co.*, 654 F.2d 529,

536 (9th Cir. 1981); *Sikhs for Justice*, 144 F. Supp. 3d at 1096.

The FAC should be dismissed with prejudice.  The Court's Order dismissing the initial

complaint was thorough and well-reasoned, giving Plaintiffs ample guidance regarding the defects

in their initial complaint.  Plaintiffs had the opportunity to state their best case in the amended

complaint, but they fell far short.  This is a "strong indication that the plaintiffs have no additional

facts to plead," and that further amendment would be futile.  *Zucco Partners, LLC v. Digimarc*

*Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("As here, where the plaintiff has previously been

granted leave to amend and has subsequently failed to add the requisite particularity to its claims,

[t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation

marks omitted)); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can,

by itself, justify the denial of a motion for leave to amend.").

## II.   **BACKGROUND**

The background allegations are set forth in Facebook's prior Motion to Dismiss and the

Court's Order granting that Motion, and so Facebook will not repeat them here.  Below is a brief

MOTION TO DISMISS AMENDED COMPLAINT

overview of the procedural developments since Facebook's previous Motion to Dismiss and the handful of amendments Plaintiffs made in the FAC.

### A.      The Court Dismissed Plaintiffs' Initial Complaint

In the original complaint, Plaintiffs alleged five causes of action: a First Amendment *Bivens* claim, a claim for damages under Title II of the federal Civil Rights Act and Section 1983, a claim for damages under the California Unruh Civil Rights Act, a breach of contract claim, and two claims for breach of implied covenant of good faith and fair dealing.  Original Complaint ("Compl.") ECF No. 1.  All of these claims were based upon Facebook's decision to remove FAN's account and profile pages.  As the Complaint and FAC allege, Facebook explained that it took down the accounts "because they were controlled by the IRA" (Compl. ¶ 20; FAC ¶ 20, ECF No. 36), which "was an agency which allegedly employed fake accounts registered on major social networks, discussion boards, online newspaper sites, and video hosting services to promote the Russian government's interests in domestic and foreign policy," Compl. ¶ 11; FAC ¶ 11. Facebook's removal of such accounts was part of its effort following the 2016 election "to shut down 'inauthentic' Facebook accounts that allegedly sought to inflame social and political tensions in the United States."  FAC ¶ 10.

Following the filing of Facebook's Motion to Dismiss (ECF No. 25), the Court issued a thorough Order dismissing each of the causes of action in Plaintiffs' complaint.

The Court dismissed Plaintiffs' claim for damages under Section 1983 with prejudice, concluding that Plaintiffs had failed to allege a deprivation of a constitutional right by a party acting under color of state law.  Order 6-7.  It dismissed Plaintiffs' remaining statutory and common law claims on the ground that they seek to hold Facebook liable as a publisher or speaker of third-party content, and thus Facebook is immune from such claims under Section 230(c)(1) of the CDA.  *Id.* 7-13.  As for Plaintiffs' *Bivens* claim for violation of the First Amendment, the Court held that the First Amendment applies only to state actors with very few exceptions, none of which are applicable in this case.  *Id.* 13-21.

1    The Court granted leave to amend all but the Section 1983 claim, stating that it was

2  "skeptical that Plaintiffs can state a claim" but granted leave "out of an abundance of caution."

3  Order 13, 22.

4    **B.    Plaintiffs Filed An Amended Complaint With Minor Modifications**

5    On August 19, 2019, Plaintiffs filed a FAC reasserting the causes of action alleged in its

6  original complaint except for the claim for damages under Section 1983 (which was dismissed

7  with prejudice) and the Title II claim.  The vast majority of allegations in the FAC remain

8  unchanged.  *See* Exhibit A (redline comparing the allegations of Plaintiffs' original complaint and

9  FAC).

10    Plaintiffs have added a handful of new allegations describing activities that took place after

11  the alleged actions Facebook took regarding FAN's account and pages—Facebook's investigation

12  of Russian interference with the 2018 midterm election, as well as its removal in 2018 and 2019 of

13  accounts engaged in "inauthentic behavior," as reported in several Facebook press releases.  FAC

14  ¶¶ 23-27.  Plaintiffs also added conclusory allegations asserting that Facebook "is a public forum"

15  (*id.* ¶ 72), that Facebook has an "agreement" with the government which "constitutes a conspiracy

16  to deny FAN its free speech rights" (*id.* ¶ 75), and that "FAN at no point published materials that

17  were obscene, indecent, or were otherwise of a sexual nature" (*id.* ¶ 96).

18  **III.    LEGAL STANDARD**

19    To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to

20  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

21  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

22  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

23  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24    Though the Court accepts all allegations of material fact as true, it should not accept mere

25  "'labels and conclusions,'" nor a "'formulaic recitation of the elements of a cause of action.'"

26  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Courts are "free to ignore legal

27  conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions

28  cast in the form of factual allegations."  *Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d

764, 767 (8th Cir. 2003) (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   None Of The Amendments Undermine Facebook's CDA Immunity To Plaintiffs' Statutory And Common Law Claims

#### 1.   Plaintiffs' Single New Allegation Regarding The CDA Misses The Mark

This Court correctly held in dismissing the initial complaint that the CDA immunizes Facebook from all of Plaintiffs' non-constitutional causes of action. Order 7.  In the FAC, Plaintiffs make barely a token effort to plead around the CDA's grant of immunity.  The FAC contains a single new allegation aimed at the CDA: "FAN at no point published materials that were obscene, indecent or were otherwise of a sexual nature.  To the contrary, all content published by FAN was constitutionally protected and was known by Facebook to be constitutionally protected." FAC ¶ 96.  This allegation rehashes an argument Plaintiffs made in their opposition to Facebook's prior motion to dismiss.  *See* MTD Opp. 16, 18, ECF No. 26.

As the Court explained in its Order regarding why the nature of the content FAN allegedly published is immaterial to the CDA's grant of immunity under Section 230(c)(1), the "statutory text provides that no 'provider or speaker of an interactive computer service shall be treated as the publisher or speaker of *any information* provided by another information content provider." Order 12 (emphasis in original).  Just as Congress drew no distinction between speech that is political or non-political in Section 230(c)(1), *id.*, it likewise drew no distinction in that subsection between content that is obscene or non-obscene, decent or indecent, etc.[1]

The FAC's allegation regarding material that is "obscene, indecent or . . . otherwise of a sexual nature" appears to be in reference to Section 230(c)(2)(A) of the CDA, which provides immunity for voluntary actions taken in "good faith" to remove or restrict access to content the provider considers to be "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable."  47 U.S.C. § 230(c)(2)(A).  As this Court already has acknowledged,

---

[1] The significance of FAN's allegation that the content it published was "constitutionally protected" is unclear.  To the extent this refers to FAN's argument that the content is protected by

Facebook claims immunity under Section 230(c)(1), not under Subsection (c)(2).  *See* Order 12 (quoting the operative provision, Section 230(c)(1)); *see also* MTD Reply 3, ECF No. 27. Subsections (c)(1) and (c)(2) provide separate and independent grants of immunity.  And as Facebook demonstrated in responding to Plaintiffs' previous erroneous reliance on Subsection (c)(2) (*see* MTD Reply 3 & n.4), Subsection (c)(2) provides an "additional shield from liability" to providers who restrict obscene or otherwise objectionable content.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009).  But "Subsection (c)(1), *by itself*, shields from liability *all publication decisions*, whether to edit, to remove, or to post, with respect to content generated entirely by third parties," *id.* (emphasis added), and it does so irrespective of the nature of the content at issue.  Order 12; 47 U.S.C. § 230(c)(1).[2]

Entitlement to CDA immunity, in other words, does not depend on the restricted content being "obscene."  Facebook may claim CDA immunity for removing content of any kind generated by third parties under Section 230(c)(1).

## 2.     All The Requisites Of CDA Immunity Remain Satisfied

For the reasons this Court found in its Order, all of the elements for CDA immunity under Subsection (c)(1) continue to apply; none of FAN's amendments to the complaint change that result.  Order 8-13; *see also* MTD 6-9, ECF No. 25.

First, Facebook remains an "interactive computer service," as this and many other courts have held.  Order 8-9; *see Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).

Second, the information for which Plaintiffs seek to hold Facebook liable continues to be information provided by FAN—indeed, the same allegations supporting the Court's Order

---

the First Amendment, then the allegation is subsumed within the arguments regarding Plaintiffs' First Amendment claim, which are addressed below at Part IV.C.

[2] By contrast, for Subsection (c)(2), "the persons who can take advantage of this liability shield are not merely those whom subsection (c)(1) already protects, but any provider of an interactive computer service."  *Barnes*, 570 F.3d at 1105.  "Thus, even those who cannot take advantage of subsection (c)(1), perhaps because they developed, even in part, the content at issue," may be able to take advantage of Subsection (c)(2).  *Id.*

regarding this element also appear in the FAC.  *Compare* Order 9-10 (citing Compl. ¶¶ 2-3, 25), *with* FAC ¶¶ 2-3, 30.  The FAC does not allege that *Facebook* provided any of the content at issue. For the reasons this Court previously found that Plaintiffs seek to hold Facebook liable for removing *FAN*'s Facebook account, posts, and content, the Court should find the same true with respect to the FAC.  *See* Order 9-10; *Lancaster v. Alphabet Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *2-3 (N.D. Cal. July 8, 2016); *Sikhs for Justice*, 144 F. Supp. 3d at 1093-94.

Finally, Plaintiffs' causes of action continue to treat Facebook as a publisher.  Each of Plaintiffs' claims relate to Facebook's removal of FAN's account, profile, or content, and thus its decision *not to publish* FAN's content.  *Compare* Order 11 (citing Compl. ¶¶ 91, 98 & 106), *with* FAC ¶¶ 88, 95 & 105.  Indeed, an allegation Plaintiffs newly added at Paragraph 97 merely serves to reinforce the conclusion that their claims arise from Facebook's decision not to publish FAN's content: "By *blocking FAN*[*'s] content*, Facebook operated in bad faith."  (FAC ¶ 97 (emphasis added)).  Because FAN's claims arise from Facebook's decision to remove FAN's account and content, they "necessarily involve[] treating [Facebook] as a publisher."  *Barnes*, 570 F.3d at 1103; *see also* Order at 10-11; *Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 WL 6540452, at *8 (N.D. Cal. Nov. 2, 2016) (CDA barred claim based on content removal as such claim "seeks to hold defendants liable for 'an action that is quintessentially that of a publisher,' regardless of defendants' alleged motive"); *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *1, *3-5  (N.D. Cal. May 9, 2019) (holding Facebook immune under CDA for allegedly removing "advertisement campaign on the ECL [Facebook] page calling for the recall of John Casson, the then-British Ambassador to Egypt"; "[D]efendant's decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct."); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (holding Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles").

Such publisher actions are "perforce immune under section 230."  *Fair Housing Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1170-71 (9th Cir. 2008).

**B.      As Before, Plaintiffs' Statutory And Common Law Claims Also Fail On The Merits**

Even if Facebook were not immune from liability under the CDA, all of Plaintiffs' statutory and common law claims would also fail on the merits for the reasons stated in Facebook's prior Motion to Dismiss.  MTD 14-19.  Only two new allegations arguably affect the merits of such claims, and they are not sufficient to cure their deficiencies.

With respect to FAN's contract-related claims, the FAC alleges that the "'Rules of Facebook' state that anyone who abides by Facebook's rules and signs a user agreement is entitled to use its forum," and that "FAN executed Facebook's user agreement and has at all times abided by Facebook's rules."  (FAC ¶¶ 70-71.)  These allegations are redundant of those alleged in the original complaint (*see* Compl. ¶¶ 94-97) and they remain deficient to state a claim for breach of contract or the implied covenant of good faith and fair dealing for the reasons explained in Facebook's prior Motion to Dismiss.  Namely, Plaintiffs still fail to identify a specific provision in the written contract entitling Plaintiffs to use Facebook after it had determined that Plaintiffs violated the Terms of Service.  *See* MTD 17 (citing *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 512-13 (1986)).  This failure is unsurprising because the Terms of Service, Exhibit 2 to the FAC, shows there is no such entitlement.  The Terms place limits on user access to the service and do not guarantee or otherwise promise continued access when users fail to comply with such terms.  MTD 18.  This precludes Plaintiffs' breach of contract and covenant of good faith and fair dealing claims.  *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) (Plaintiff failed to plead breach of contract claim as "Facebook's Terms of Service place restrictions on users' behavior, they do not create affirmative obligations." (internal quotation marks omitted)); *Young v. Facebook, Inc.*, No. 5:10-cv-03579, 2010 WL 4269304-JF/PVT, at *3-4 (N.D. Cal. Oct. 25, 2010) (implied covenant of good faith claim fails where "no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms").

Furthermore, with respect to Plaintiffs' Unruh Civil Rights Act claim, the FAC adds no

new allegations to support the conclusory allegation that "[t]he national origin and ethnicity of FAN, its owners and its subscribers were motivating factors behind Facebook's actions."  FAC ¶ 88.  Indeed, the allegations in the FAC make evident that the opposite is true—Facebook took the removal action not because of any nationality or ethnicity discrimination but rather because of evidence that FAN was involved in a conspiracy to use Facebook to interfere with the 2016 presidential election in violation of Facebook's facially neutral terms.  *Id.* ¶¶ 34, 37, 39, 42, 46.  "The California Supreme Court has concluded that the [Unruh] Act requires allegations of willful, affirmative misconduct, and that a plaintiff must allege more than the disparate impact of a facially neutral policy on a particular group."  *Young*, 790 F. Supp. 2d at 1116.  As the FAC alleges, Facebook explained that it took down FAN's account and pages "because they were controlled by the IRA," FAC ¶ 20, which "was an agency which allegedly employed fake accounts registered on major social networks, discussion boards, online newspaper sites, and video hosting services to promote the Russian government's interests in domestic and foreign policy," *id*. ¶ 11.  As the *Ebeid* case recently explained in dismissing a similar national origin theory of liability under Title II against Facebook, "[w]hile the complaint alleges plaintiff's national origin, . . . other than a conclusory allegation," it "does nothing to connect that national origin to Facebook's alleged conduct."  *Ebeid*, 2019 WL 2059662, at *5.[3]  The same is true here.  "Indeed, the complaint's allegations suggest that, if anything, Facebook denied plaintiff[s] access to its services based on" their relationship to the IRA and their misleading and unlawful conduct in violation of Facebook's terms, not their national origin.  *Id*.  Plaintiffs' insinuation that Facebook acted for any other purpose is completely speculative and cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 679.

---

[3] Furthermore, it is notable that the FAC deleted the allegation contained in the initial complaint that "[n]either FAN nor its owner are listed as a 'Specially Designated National' by the U.S. Department of the Treasury."  Compl. ¶ 71.  This now-since deleted admission only serves to strengthen the inference drawn from the remaining allegations that Facebook took the removal action not because of any nationality or ethnicity-based discrimination, but rather because of evidence that FAN was involved in a conspiracy to interfere in the 2016 presidential election.  FAC ¶¶ 34, 37, 39, 42.

**C.      The Amended Complaint Fails To Cure Fundamental Defects In Plaintiffs' First Amendment Claim**

The fundamental flaw in Plaintiffs' First Amendment claim is that Facebook indisputably is a private corporation to which the First Amendment does not apply.  FAC ¶ 7 ("Defendant Facebook, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principle [sic] place of business in Palo Alto, California.").  The Court correctly dismissed Plaintiffs' First Amendment claim from the initial complaint because "the First Amendment applies only to federal and state governmental actors with very few exceptions," and the complaint's allegations did not satisfy any exceptions.  Order 21; *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) ("[W]e . . . start with the presumption that private conduct does not constitute government action.").  In so doing, the Court joined numerous other courts that have properly rejected attempts to hold Facebook liable under the First Amendment.  *See* Order at 14 (collecting cases).

In the FAC, the fundamental flaw in FAN's First Amendment claim—that "Facebook's deletion of FAN's profile, page, and content is private conduct that does not constitute governmental action" (Order 14)—persists.  None of Plaintiffs' new allegations come close to satisfying the showing required to justify treatment of Facebook as a state actor, whether under the public forum or joint action tests, for its decision to remove FAN's account and profile pages.  *Sutton*, 192 F.3d at 835.

**1.      A Bare Allegation That Facebook "Is A Public Forum" Fails To Satisfy The Public Forum Test**

The Court's Order explained that, to state a First Amendment claim under the "public function" test, Plaintiffs must allege "that Facebook engage[d] in functions that are traditionally and exclusively the functions of the state."  Order 16; *see Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1210 (9th Cir. 2002).  In the FAC, Plaintiffs added a single conclusory allegation related to the public function test, asserting that "since Facebook is a public forum, or at least a limited public forum, the constitutional protections of the Bill of Rights apply to

-11-

Facebook . . . ."  FAC ¶ 72.  It added no other allegations regarding municipal functions, let alone functions that are "traditionally and exclusively the functions of the state."

The new allegation is insufficient to establish state action under the "public function" test. In addition to being conclusory, *Iqbal*, 556 U.S. at 678, the allegation also fails to show that Facebook engaged in functions that are traditionally and exclusively functions of the state.  Order 16; *see also Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) ("Defendants do not appear to be at all like, for example, a private corporation that governs and operates all municipal functions for an entire town, or one that has been given control over a previously public sidewalk or park, or one that has effectively been delegated the task of holding and administering public elections." (citations omitted)).  Indeed, in a recent decision, the Supreme Court expressly rejected the notion that a private entity who provides a forum for speech is thereby transformed into a state actor.  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) ("Therefore, a private entity who provides a forum for speech is not transformed by that fact alone into a state actor."); *see also Prager*, 2018 WL 1471939, at *8 (rejecting argument that "*private social media corporations* like YouTube are state actors that must regulate the content of their websites according to the strictures of the First Amendment" under public forum analysis).  Plaintiffs' solitary new allegation is not sufficient to establish that Facebook is a "public forum" subject to First Amendment strictures.

### 2.    New Allegations Regarding Facebook's Cooperation With The Government Fail To State A Plausible Claim Of Joint Action

Nor does the FAC plausibly allege "joint action."  The Court explained that, to satisfy the "joint action" test, Plaintiffs must allege facts establishing: (1) "Facebook was a willful participant in joint action with the government," or (2) that "Facebook and the government conspired together."  Order 18-19.  With respect to the "willful participant" theory, the Court explained that the allegations must show there were "'state actions' directed by or jointly conceived, facilitated, or performed by the [government actor]."  Order 20 (quoting *Brunette*, 294 F.3d at 1213).  A private party will only be liable "if its particular actions are 'inextricably intertwined' with those of the government."  *Brunette*, 294 F.3d at 1211 (quoting *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d

498, 503 (9th Cir. 1996)).  To prove a conspiracy between a private party and the government, Plaintiffs were required to allege, in a non-conclusory fashion, "an agreement or 'meeting of the minds' to violate constitutional rights."  Order 21 (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)).

None of Plaintiffs' new allegations come close to showing joint action under the law.

(a)    *Facebook's Sharing Of Information*

First, Plaintiffs added an allegation regarding Facebook's sharing of information with the government: "On May 10, 2018, Facebook reported it gave 3,000 Facebook advertisements the IRA ran on Facebook and Instagram between 2015 and 2017 to Congress 'so they could better understand the extent of Russian interference in the last US presidential election.'"  FAC ¶ 23. This allegation does not meaningfully differ from allegations contained in the initial complaint. *See* Compl. ¶ 17 ("On September 21, 2017, Facebook's General Counsel, Colin Stretch, stated that Facebook would provide the United States Congress with information related to the 3,000 advertisements Facebook previously located.").  The Court already held similar allegations are insufficient as a matter of law, because "the case law is unequivocal that 'supplying information [to the government] alone does not amount to conspiracy or joint action.'"  Order 19 (quoting *Deeths v. Lucile Slater Packard Childrens Hosp. at Stanford*, No. 1:12-cv-02096-LJO, 2013 WL 6185175, at *10-11 (E.D. Cal. Nov. 26, 2013)).  This added allegation is no different, and fails to show joint action for the same reason the Court previously explained.

(b)    *Information Received From Government In Connection With "Partnership"*

Second, Plaintiffs added allegations regarding several Facebook press releases describing, at a high level, Facebook's efforts to work with the government and law enforcement in connection with and following the 2018 midterm election through the sharing of information and resources.  FAC ¶¶ 23-27.

The FAC alleges that Facebook's Head of Cybersecurity Policy, Nathaniel Gleicher, has stated in various press releases:

1        •    "[F]inding and investigating potential threats isn't something [Facebook does]

2            alone. [They] also rely on external partners, like the government."  FAC ¶ 24.

3        •    Facebook has a "partnership" with the government and law enforcement agencies,

4            which was "especially critical in the lead-up to [the] midterm elections" in 2018

5            because of the government's "broader intelligence work."  He shared that "law

6            enforcement agencies can draw connections off our platform to a degree that we

7            simply can't" and "[t]ips from government and law enforcement partners can

8            therefore help our security teams attribute suspicious behavior to certain groups,

9            make connections between actors, or proactively monitor for activity targeting

10          people on Facebook."  This information, as well as the government's "tools to deter

11          or punish abuse," are the reasons why Facebook is "actively engaged with the

12          Department of Homeland Security, the FBI, including their Foreign Influence Task

13          Force, Secretaries of State across the US … on our efforts to detect and stop

14          information operations, including those that target elections."  FAC ¶ 25.

15        •    "*[B]ased on an initial tip from US law enforcement*, [Facebook] removed 107

16            Facebook Pages, Groups, and accounts, as well as 41 Instagram accounts, for

17            engaging in coordinated inauthentic behavior as part of a network that originated in

18            Russia and operated in Ukraine."  FAC ¶ 26 (emphasis in original).  The removal of

19            such accounts occurred in January 2019.  *Id.*

20        •    Facebook is "working more closely" with the U.S. government and law

21            enforcement with regard to "inauthentic behavior on Facebook."  FAC ¶ 27.

22       At the outset, none of these allegations even mentions FAN, and in fact, each of them *post*-

23 dates the relevant conduct and time period at issue.  Whereas, according to Plaintiffs' allegations,

24 Facebook removed FAN's accounts following its investigation into interference in the *2016*

25 presidential election, the new allegations pertain to Facebook's activities in connection with and

26 following the *2018* midterm election.  FAC ¶¶ 10, 20, 24-27, 52.  The lack of any connective

27 tissue between these new allegations and Facebook's decision to remove FAN's account and

28 postings following the 2016 presidential election alone establishes the irrelevancy of the

allegations and their insufficiency to establish joint action.  "It is not enough . . . for a plaintiff to plead state involvement in some activity of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved *with the activity that caused the injury* giving rise to the action."  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008) (emphasis added) (internal quotation marks omitted); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (explaining that the state action inquiry "begins by identifying *the specific conduct* of which the plaintiff complains" (internal quotation marks omitted) (emphasis added); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 842-43 (9th Cir. 2017) (similar).

Even assuming that these allegations had anything to do with FAN, they still fail: none alters the essential fact that the decision to remove FAN's account and postings—the relevant conduct about which FAN complains—is attributable to *Facebook* and not to the government, as the FAC itself continues to allege.  FAC ¶ 20 (alleging that "*Facebook removed* more than 270 Russian language accounts" because, according to Facebook's Chief Security Officer, Alex Stamos, "'they were controlled by the IRA'" (emphasis added)).  None of the new allegations change the fact that Plaintiffs are seeking to impose First Amendment liability for a decision attributable to Facebook, a private social media company.  Plaintiffs cannot establish joint action. *See Blum v. Yaretsky*, 457 U.S. 991, 1008 & n.19 (1982) (holding that nursing home discharge and transfer decisions do not constitute state action, notwithstanding regulations surrounding the decision, because "[t]hose decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State").

And notably, in a now-since deleted allegation, Plaintiffs' original complaint *admitted* that "[i]n fact, the U.S. government has not taken any actions whatsoever against FAN."  Compl. ¶ 71. Of course, "[a] party [ ] cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories."  *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984); *see also ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 794 (D. Minn. 2019) (a party "cannot simply delete damaging

admissions from its complaint to render its claims plausible"); *Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'").

At most, the FAC's new allegations regarding joint action suggest, in a conclusory manner, that Facebook has worked closely in partnership with the government and received information from the government that has helped Facebook to identify accounts engaged in suspicious or "inauthentic" behavior.  But as courts consistently have held, allegations like these regarding the existence of a "partnership" or close working relationship between a party and the government are insufficient to support a plausible inference of joint action.  *See Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160–61 (3d Cir. 2017) (allegations of party's alleged "partnership" with state "do not 'end the inquiry' on the state actor question" as they do not establish that the government was "responsible for the specific conduct of which the plaintiff complains"; finding no state action as party's actions were taken by himself and "did not need permission" from the state); *United States v. Int'l Bhd. Of Teamsters*, 988 F. Supp. 759, 764 (S.D.N.Y. 1997) (allegation that party's "decision constituted state action because [it] 'worked closely with' and received information from 'federal law enforcement authorities'" is insufficient and "misinterprets the state action inquiry," which "turns on whether the [party's] decision is fairly attributable to the Government, not on the source of the information received by [it]"), *aff'd*, 156 F.3d 354 (2d Cir. 1998); *Watson v. Rogers*, Civ. No. 07-2165 (JAG), 2008 WL 2224812, at *3 (D.N.J. May 27, 2008) (allegation that arrangement "creates a partnership between Moving Defendants and the State of New Jersey and thereby transforms Moving Defendants into state actors" insufficient under joint action test); *cf. Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 (state action requires a showing that "the State has exercised coercive power or has provided *such significant encouragement*, either overt or covert, that the choice must in law be deemed to be that of the state." (internal quotation marks omitted) (emphasis in original)).

1    Nor do allegations that Facebook received government assistance in the form of "tips,"

2    information, or other resources qualify as joint action, as none establishes that the *government* was

3    responsible for the ultimate conduct at issue—the removal of FAN's account and pages.  Indeed,

4    numerous courts have rejected similar allegations of information sharing as insufficient to qualify

5    as joint action.  *See Int'l Bhd. Of Teamsters*, 988 F. Supp. at 764 (that party "received information

6    from" law enforcement insufficient as joint action inquiry "turns on whether the [party's] decision

7    is fairly attributable to the Government, not on the source of the information received by [it]"); *see*

8    *also Anderson v. Suiters*, 499 F.3d 1228, 1233 (10th Cir. 2007) (party "does not become a state

9    actor, however, simply because she has received and published information from a governmental

10   official"); *Sanders v. Long Island Newsday*, No. 09-cv-2393 (JFB)(ETB), 2010 WL 3419659, at

11   *4 (E.D.N.Y. Aug. 27, 2010) (plaintiff's argument that "Newsday conspired with the defendants,

12   who were state actors, and received information about him from the police" irrelevant as

13   "[c]ommunications between a private and a state actor, without facts supporting a concerted effort

14   or plan between the parties, are insufficient to make the private party a state actor").

15                    (c)    *"Conspiracy" To Deny Rights*

16   Finally, FAN added an allegation at Paragraph 75 stating that "[t]his agreement between

17   Facebook and the U.S. government constitutes a conspiracy to deny FAN its free speech rights

18   guaranteed under the U.S. Constitution."  FAC ¶ 75.  The agreement referenced in Paragraph 75

19   appears to refer to the allegation in the prior paragraph that Facebook is "'actively working with

20   the U.S. government'" on its ongoing investigations into Russian interference.'"  *Id.* ¶ 74.  This

21   bare-boned allegation does not show the existence of "an agreement or meeting of the minds to

22   violate constitutional rights," *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539,

23   1540-41 (9th Cir. 1989), and cannot support a conspiracy theory of joint action.  Such "a bare

24   allegation of . . . joint action will not overcome a motion to dismiss."  *Dietrich v. John Ascuaga's*

25   *Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (internal quotation marks omitted); *see also Burns v.*

26   *County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for a conspiracy to violate

27   one's constitutional rights under section 1983, the plaintiff must state specific facts to support the

28   existence of the claimed conspiracy."); *Sing v. Warren*, No. 2:16-cv-2024-MCE-KJN-PS, 2016

WL 10644092, at *1 (E.D. Cal. Dec. 7, 2016) (though "second amended complaint makes several vague references to a civil conspiracy, … plaintiff yet again fails to allege any non-conclusory facts plausibly suggesting joint action between defendants and any state actor").

In sum, the allegations fail to show that Facebook's removal of FAN's accounts and postings was "directed by or jointly conceived, facilitated, or performed by the [government actor]."  Order at 20 (quoting *Brunette*, 294 F.3d at 1213).

**D.     The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

Because Plaintiffs allege subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (FAC ¶ 8), and Plaintiffs have failed to state a claim for a First Amendment violation, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir. 1981); *Sikhs for Justice*, 144 F. Supp. 3d at 1096.

**V.     CONCLUSION**

For these reasons, the Court should dismiss the FAC without leave to amend.

DATED:  September 16, 2019                MUNGER, TOLLES & OLSON LLP
                                         ROSEMARIE T. RING
                                         JONATHAN H. BLAVIN


                                         By:   */s/ Rosemarie T. Ring*
                                         ROSEMARIE T. RING
                                         Attorneys for Defendant Facebook, Inc.

MOTION TO DISMISS AMENDED COMPLAINT