ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| FEDERAL AGENCY OF NEWS LLC, and EVGENIY LVOVICH ZUBAREV, | Case No. 5:18-cv-07041-LHK |
|---|---|
| Plaintiffs, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| vs. | |
| FACEBOOK, INC., | Judge:  Hon. Lucy H. Koh
Date:   January 9, 2020
Time:   1:30 p.m.
Crtrm.: 8, 4th Floor |
| Defendant. | |

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................................1

II.   ARGUMENT ......................................................................................................................1

      A.     Plaintiffs' Statutory and Common Law Claims Are Barred by the CDA ..................1

      B.     Plaintiffs' Statutory and Common Law Claims Fail on the Merits...........................4

      C.     Plaintiffs Have Not Alleged a Cognizable First Amendment Claim ........................6

            1.     Plaintiffs Cannot Establish that Facebook Is a Public Forum .......................6

            2.     Plaintiffs Cannot Establish that Facebook's Removal of FAN's Account Amounted to "Joint Action" with the Government .........................7

III.  CONCLUSION .................................................................................................................10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ............................................................................................................... 13

*Anderson v. Suiters*,
    499 F.3d 1228 (10th Cir. 2007) ............................................................................................ 14

*Borrell v. Bloomsburg Univ.*,
    870 F.3d 154 (3d Cir. 2017) ................................................................................................. 14

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................................................................. 9

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ............................................................................................... 7

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ............................................................................................... 8

*Ebeid v. Facebook, Inc.*,
    No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................... 8

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................................................................... 8

*Federal Agency of News LLC v. Facebook, Inc.*,
    395 F. Supp. 3d 1295 (N.D. Cal. 2019) ......................................................................... passim

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .................................................................................................... 8

*Frances T. v. Village Green Owners Assn.*,
    42 Cal. 3d 490 (1986) .......................................................................................................... 10

*Freedom Watch, Inc. v. Google, Inc.*,
    368 F. Supp. 3d 30 (D.D.C. 2019) ....................................................................................... 12

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) .................................................................................................. 7

*Goddard v. Google, Inc.*,
    No. C 08-2738JF(PVT), 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .............................. 8

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ............................................................................................... 9

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Levitt v. Yelp! Inc.*,
  No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ........................................ 8

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982) ............................................................................................................... 13

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019) ........................................................................................................... 11

*Mata v. Manpower Inc.*,
  No. 14-CV-03787-LHK, 2016 WL 1039037 (N.D. Cal. Mar. 15, 2016) ............................... 12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ................................................................................................... 8

*Packingham v. North Carolina*,
  137 S. Ct. 1730 (2017) ........................................................................................................... 12

*Prager Univ. v. Google LLC*,
  No. 17-cv-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ........................... 11, 12

*Roberts v. AT&T Mobility LLC*,
  877 F.3d 833 (9th Cir. 2017) ................................................................................................. 13

*Sanders v. Long Island Newsday*,
  No. 09-cv-2393 (JFB)(ETB), 2010 WL 3419659 (E.D.N.Y. Aug. 27, 2010) ....................... 14

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
  546 F.3d 255 (2d Cir. 2008) .................................................................................................. 13

*United States v. Int'l Bhd. of Teamsters*,
  988 F. Supp. 759 (S.D.N.Y. 1997) ........................................................................................ 14

*Whitney Information Network, Inc. v. Xcentric Ventures, LLC*,
  No. 2:04-cv-47-FtM-34SPC, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ............................ 7

*Young v. Facebook, Inc.*,
  No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ............................ 9

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................................... 6

## I. INTRODUCTION

Rather than grapple with the substantial authority undermining their claims, Plaintiffs in their Opposition ("Opp.") largely choose to ignore the law and merely rehash arguments that this Court has already rejected. Plaintiffs, for example, do not discuss—and indeed, completely ignore—this Court's prior order dismissing Plaintiffs' initial complaint. Plaintiffs similarly ignore Facebook's Motion to Dismiss the Amended Complaint ("Motion"), which, building on the Court's prior order, explains in detail why Plaintiffs' handful of new allegations do not save their claims from dismissal. And Plaintiffs fail to address or distinguish the dozens of cases cited in both the Court's prior order and Facebook's Motion demonstrating that Plaintiffs' claims fail as a matter of law, either because they fail on the merits, are barred by the CDA, or both.

Instead, Plaintiffs largely repeat arguments that this Court already has rejected, without any explanation of why the Court's rejection of those arguments was unsound or how any new allegations in the complaint could now render their claims viable. Plaintiffs rely on lengthy quotations of the allegations from their First Amended Complaint ("FAC"), but this Court—and many others—have already deemed similar allegations insufficient. In short, Plaintiffs have not put forward any reason for this Court to depart from its prior decision that Plaintiffs' claims have no legal basis and are subject to dismissal. Accordingly, Facebook's Motion should be granted, and Plaintiffs' FAC should be dismissed without further leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that district court has "particularly broad" discretion to deny leave to amend "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims").

## II. ARGUMENT

### A. Plaintiffs' Statutory and Common Law Claims Are Barred by the CDA

As Facebook argued in its Motion, this Court correctly held that the CDA bars Plaintiffs' non-constitutional claims, and Plaintiffs have failed to put forward any new allegations undermining that prior holding. Mot. 6–8. Indeed, Plaintiffs have not added *any* allegations to the FAC that impact the CDA's applicability (nor do they point to any in their Opposition). Instead, Plaintiffs offer just four arguments regarding the CDA, none of which has merit.

*First*, Plaintiffs once again argue that "the CDA seeks to regulate indecency and obscenity in cyberspace" and therefore does not apply to a case involving purported "political speech that strikes at the heart of the First Amendment." Opp. 14–15.  But this Court already rejected that exact argument, observing that "Plaintiffs fail to cite any authority" to support it and explaining that "[i]mmunity under the Communications Decency Act does not contain a political speech exception." *Federal Agency of News LLC v. Facebook, Inc.* (*FAN*), 395 F. Supp. 3d 1295, 1307 (N.D. Cal. 2019).

*Second*, Plaintiffs argue that Facebook is "an information content provider"—and therefore outside the scope of the CDA—because "it is responsible, in whole or in part, for creating or developing content." Opp. 15–17.  Plaintiffs base that claim on assertions—nowhere alleged in the FAC—that Facebook (i) "create[s] content that it then inserts into various user 'feeds' to further its own business," Opp. 2, (ii) "receives information (data mining) from users," and (iii) analyzes data in various ways.  Opp. 16–17.  Even if those assertions were alleged in the FAC, and even if those actions by Facebook could plausibly constitute "content," they are irrelevant here. As this Court correctly held, what matters for purposes of the CDA is who created "the information for which Plaintiffs *seek to hold Facebook liable*—FAN's account, posts, and content." *FAN*, 395 F. Supp. 3d at 1305 (emphasis added).  That information was unquestionably "not provided by Facebook, but rather, by FAN." *Id.*  The CDA therefore applies, regardless of whether Facebook is responsible for some *other* supposed "content" on its website. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (holding that CDA turns on whether website "created or developed the particular information at issue"; CDA applied because website did not create "the relevant information" underlying plaintiff's claims); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833 n.11 (2002) ("The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading."); *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, No. 2:04-cv-47-FtM-34SPC, 2008 WL 450095, at *12 (M.D. Fla. Feb. 15, 2008) (holding that for CDA, what matters "is whether Defendants are responsible, in whole or in part, for the creation or development of the particular postings . . . that are the subject of this lawsuit").

*Third*, Plaintiffs seem to argue that the CDA does not apply because Facebook is more than a "passive forum" based on certain Facebook features and functionalities and its business model.  Opp. 17.  But those features (such as Facebook's supposed "data mining") do not change that the CDA applies here.  Rather, courts repeatedly have held that the CDA applies even when a website provides functionality that goes beyond merely providing a "passive forum" for third-party content.  *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (holding that "features and functions, including algorithms, to analyze user posts" were "tools meant to facilitate the communication and content of others," rather than "content in and of themselves"); *Force v. Facebook, Inc.*, 934 F.3d 53, 67 (2d Cir. 2019) (holding that "Facebook's use of algorithms" did not render CDA inapplicable).  Moreover, that Facebook's business model may be premised upon providing a platform for third-party content is irrelevant.  Under the CDA, the "fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content."  *Goddard v. Google, Inc.*, No. C 08-2738JF(PVT), 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008); *see also Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *7–8 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014) (rejecting "intent-based exception" to CDA immunity including, *e.g.*, website's "financial considerations").

*Fourth*, Plaintiffs argue that "just as Plaintiffs have been required to state with specificity their allegations . . . Facebook should be held to the same standard," by "prov[ing] its defense by evidence at trial."  Opp. 17.  But courts have held just the opposite.  Courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'"  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008)).  And courts repeatedly have applied the CDA to Facebook and other websites at the motion-to-dismiss stage.  *E.g.*, *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *1–3 (N.D. Cal. May 9, 2019) (dismissing complaint on CDA grounds at motion to dismiss stage); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016)

(affirming dismissal of complaint on CDA grounds).  As the Court already has held, it is clear based upon the allegations in the complaint that the CDA applies here.

Accordingly, this Court was correct to bar Plaintiffs' claims based on the CDA, and Plaintiffs provide no basis for this Court to now deem the CDA inapplicable.

### B. Plaintiffs' Statutory and Common Law Claims Fail on the Merits

As this Court previously held, Plaintiffs' non-constitutional claims are subject to dismissal based on the CDA.  Accordingly, the Court can and should dismiss them without reaching the merits.  But even absent the CDA, Plaintiff's non-constitutional claims fail.  Mot. 9–10.

*Plaintiffs' Contract-Related Claims*:  As the Motion explained, Plaintiffs' contract-related claims fail because Plaintiffs have not identified (and cannot identify) a specific provision of any contract that granted Plaintiffs the right to continue using Facebook after Facebook determined that Plaintiffs violated its Terms of Service.  Mot. 9.  Plaintiffs also ignore that Facebook's Terms expressly give it the right to suspend or terminate a user's account if Facebook has determined that the user breached its terms or policies.  *See* FAC, Ex. 2 § 4.2.

Plaintiffs offer just one response:  A pair of conclusory assertions that Facebook's Terms of Service "guarantee access if users comply with Facebook's terms," Opp. 18, and that "so long as users do not breach the Terms of Service, Facebook is obligated to continue to provide its services," Opp. 19.  But the various provisions on which Plaintiffs rely to support that argument merely place various limitations on *users'* use of the platform and grant Facebook certain permissions relating to user data.  Opp. 18–20.  Those provisions plainly do not *require* Facebook to continue to provide its services under any circumstances, much less where Facebook concludes that users have violated its Terms, as courts repeatedly have held.  *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064, (N.D. Cal. 2016) (Plaintiff failed to plead breach of contract claim as "Facebook's Terms of Service place restrictions on users' behavior, [but] they do not create affirmative obligations") (internal quotation marks omitted); *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010) (holding that "while these provisions place restrictions on users' behavior, they do not create affirmative obligations" on Facebook to provide service).  Plaintiffs' contract-related claims therefore fail as a

matter of law, because no provision in Facebook's supposed "contract" with Plaintiffs placed an affirmative obligation on Facebook to allow Plaintiffs to continue using the platform. *See Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 512–13 (1986) (holding breach of contract claim failed where plaintiff did "not allege that any provision in any of the writings imposed" particular obligations on defendant).

*Plaintiffs' Unruh Civil Rights Act Claim*: Plaintiffs' Unruh Civil Rights Act claim also fails on the merits, because, as the Motion argues, Plaintiffs cannot support their conclusory allegation that "[t]he national origin and ethnicity of FAN, its owners and its subscribers were motivating factors behind Facebook's actions." FAC ¶ 88; Mot. 9–10. Indeed, Plaintiffs point to no facts to support that allegation, nor could they. Instead, Plaintiffs offer just two arguments.

*First*, Plaintiffs claim that Paragraph 16 of the FAC demonstrates that Facebook removed their account on the basis of national origin. But that paragraph provides no support for such a claim. Paragraph 16 discusses Facebook's early investigation into the Russian government's attempt to use Facebook in its election interference efforts, and states that Facebook conducted an investigation looking for "ads that might have originated in Russia." *See* FAC ¶¶ 15–16. It does not address removal of accounts associated with those ads (or Facebook's motivation for such removal), or even FAN's specific account and profile pages. That paragraph therefore cannot support an inference that Facebook removed *Plaintiffs'* account based on national origin, as required for Plaintiffs' Unruh Act claim.

*Second*, Plaintiffs claim that Facebook's stated reason for removing FAN's account—FAN's use of Facebook to interfere in the 2016 election—is "outrageous" and unsupported. Opp. 22. As an initial matter, whether FAN actually engaged in election interference is irrelevant; all that matters, for purposes of Plaintiffs' Unruh Act claim, is that Plaintiffs cannot allege that Facebook removed FAN's profile based on intentional discrimination and motivation against it based on national origin. But even more fundamentally, the allegations in Plaintiffs' own FAC make clear that Facebook's stated reason for removing FAN's account—that FAN violated the Terms—is far from outrageous; it is supported by statements from Facebook officials, FAC ¶ 21, and independently corroborated by an extensive government investigation, FAC ¶¶ 34, 37, 39, 42,

46. *See also FAN*, 395 F. Supp. 3d at 1302. In fact, the FAC makes evident that Facebook removed FAN's profile "'because [it] [was] controlled by the IRA,'" FAC ¶ 20, which "allegedly employed fake accounts registered on major social networks, discussion boards, online newspaper sites, and video hosting services to promote the Russian government's interests in domestic and foreign policy," *id.* ¶ 11.

Accordingly, this argument cannot save Plaintiffs' Unruh Act claim from dismissal.

### C. Plaintiffs Have Not Alleged a Cognizable First Amendment Claim

Finally, Facebook established in its Motion that Plaintiffs' new allegations do not remedy the shortcomings of their First Amendment claim—specifically, that the First Amendment has no application here at all. Mot. 11–18. Plaintiffs offer just a few arguments otherwise, none of which have merit.

#### 1. Plaintiffs Cannot Establish that Facebook Is a Public Forum

Plaintiffs first claim that Facebook is subject to the First Amendment because it is a public forum. Opp. 9–10. In doing so, Plaintiffs entirely ignore this Court's prior holding that "simply because Facebook has many users that create or share content, it does not mean that Facebook, a private social media company by Plaintiffs' own admission in the complaint, becomes a public forum." *FAN*, 395 F. Supp. 3d at 1309. Plaintiffs also ignore the many cases, cited both in this Court's prior decision and in Facebook's Motion, demonstrating that Facebook is not a public forum for purposes of the First Amendment. *See, e.g., Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) (rejecting argument that "private social media corporations like YouTube are state actors that must regulate the content of their websites according to the strictures of the First Amendment" under public forum analysis); *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) ("Therefore, a private entity who provides a forum for speech is not transformed by that fact alone into a state actor."). Plaintiffs cannot show (and in fact, do not even attempt to show) that this Court's prior decision rejecting this very argument was incorrect, or that any new allegations in the FAC affect that result.

Instead, Plaintiffs rely heavily on just one case, *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017), which they claim demonstrates that Facebook is a public forum (despite the many courts that have held otherwise). Opp. 9–11. But Plaintiffs cited *Packingham* in opposing Facebook's original motion to dismiss, *see* Dkt. No. 26 at 8, 11, and the Court nonetheless rejected Plaintiffs' argument that Facebook is a public forum, *see FAN*, 395 F. Supp. 3d at 1309. *Packingham* therefore does not undermine the Court's prior holding. Indeed, as this Court has held, *Packingham* does not demonstrate that the First Amendment applies to a company like Facebook. That case dealt with a *North Carolina law* barring registered sex offenders from using any social networking website. *Packingham*, 137 S. Ct. at 1733–34. There was therefore no question that the First Amendment applied in that case. *Packingham* had no occasion to address (much less decide) the question of whether social networking websites must abide by the First Amendment, nor did it impose a new test for determining whether social networking websites constitute a public forum. As this Court has held, "*Packingham* did not, and had no occasion to, address whether *private social media corporations* . . . are state actors that must regulate the content of their websites according to the strictures of the First Amendment." *Prager Univ.*, 2018 WL 1471939, at *8 (emphasis in original); *see also, e.g.*, *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40–41 (D.D.C. 2019) (same; explaining that *Packingham* "did not create a new cause of action against a private entity for an alleged First Amendment violation"). *Packingham* is therefore irrelevant here.[1]

### 2. Plaintiffs Cannot Establish that Facebook's Removal of FAN's Account Amounted to "Joint Action" with the Government

Plaintiffs also claim that the First Amendment applies based on the "joint action" test,

---

[1] Plaintiffs also rely on quote *from a reporter* paraphrasing an alleged statement from Mark Zuckerberg, Facebook's CEO, that Facebook is "now more like a government than a traditional company." Opp. 8 (quoting Opp. Ex. 1 at 3). Plaintiffs ignore that Mr. Zuckerberg was discussing Facebook "build[ing] out of a whole set of policies and governance around how that works," as many private companies do, not that Facebook itself was a state actor subject to constitutional restraints. Opp. Ex. 1 at 3. At any rate, Mr. Zuckerberg's comments have no bearing on the *legal* question of whether Facebook should be treated as a state actor. And even if the Court were to grant judicial notice of this article, "the Court does not accept the truth of the allegations asserted in" it, including this quote (which is absent from the FAC). *Mata v. Manpower Inc.*, No. 14-CV-03787-LHK, 2016 WL 1039037, at *7 (N.D. Cal. Mar. 15, 2016).

because "Facebook is heavily entwined with the U.S. government." Opp. 11–14.  In making that argument, Plaintiffs merely parrot the allegations from their FAC that purportedly demonstrate Facebook's close alignment with the government.[2]  See FAC ¶¶ 23–27.  But Facebook explained in its Motion, allegation by allegation, why the allegations in Plaintiffs' FAC do not satisfy the joint action test.  Mot. 12–17.  Plaintiffs' retort is entirely insufficient.

At the outset, Plaintiffs entirely ignore that none of the FAC's new allegations even mentions FAN, and in fact, each of them *post*-dates the relevant conduct and time period at issue. According to Plaintiffs' allegations, Facebook removed FAN's accounts following its investigation into interference in the *2016* presidential election, but the new allegations pertain to Facebook's activities in connection with and following the *2018* midterm election.  FAC ¶¶ 10, 20, 24–27, 52.  The lack of any connection between these new allegations and Facebook's decision to remove FAN's account and postings following the 2016 presidential election alone establishes the irrelevancy of the allegations and their insufficiency to establish joint action.  *See* Mot. 14–15 (citing, *e.g.*, *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008) ("It is not enough . . . for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with *the activity that caused the injury*' giving rise to the action" (emphasis in original)); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (explaining that the state action inquiry "begins by identifying *the specific conduct* of which the plaintiff complains" (internal quotation marks omitted) (emphasis added)); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 842–43 (9th Cir. 2017) (similar)).

Even apart from this fatal defect, Plaintiffs' new "joint action" allegations fail on their own terms.  Facebook explained in its Motion, for example, that Plaintiffs' reliance on allegations of

---

[2] Plaintiffs claim that *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982), stands for the proposition that "'[j]oint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party." Opp. 11–12. Plaintiffs do not actually quote from *Lugar*, and for good reason—because it does not state that. *Lugar* merely states that (as this Court already held) the joint action test is satisfied where a private party is "a willful participant in joint activity with the State." 457 U.S. at 941; *see also*

Facebook sharing information with the government is insufficient to establish joint action, as this Court already held in its prior order. Mot. 13 (quoting Court's prior order stating that "the case law is unequivocal that 'supplying information [to the government] alone does not amount to conspiracy or joint action'"). Facebook also explained that Plaintiffs cannot establish joint action based on any alleged "partnership" between Facebook and the government, because mere allegations of "partnership" are insufficient to establish joint action. Mot. 16 (citing *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160–61 (3d Cir. 2017) (holding that alleged "partnership" with state insufficient to establish joint action absent allegation that party acted "under any authority granted him by the state"); *United States v. Int'l Bhd. of Teamsters*, 988 F. Supp. 759, 764 (S.D.N.Y. 1997) (state action not demonstrated by allegation that party "worked closely with" government because state action inquiry "turns on whether the [party's] decision is fairly attributable to the Government")). And Facebook demonstrated that Plaintiffs' allegations relating to "tips" from the government to Facebook cannot demonstrate state action because such "tips" do not show that the government was *responsible* for the ultimate conduct at issue, *i.e.*, the removal of FAN's Facebook profile pages and account. Mot. 17 (citing *Int'l Bhd. Of Teamsters*, 988 F. Supp. at 764 (that party "received information from" law enforcement insufficient as joint action inquiry "turns on whether the [party's] decision is fairly attributable to the Government, not on the source of the information received by [it]"); *Anderson v. Suiters*, 499 F.3d 1228, 1233 (10th Cir. 2007) (party "does not become a state actor, however, simply because she has received and published information from a governmental official"); *Sanders v. Long Island Newsday*, No. 09-cv-2393 (JFB)(ETB), 2010 WL 3419659, at *4 (E.D.N.Y. Aug. 27, 2010) (plaintiff's argument that "Newsday conspired with the defendants, who were state actors, and received information about him from the police" irrelevant as "[c]ommunications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor")); *see also FAN*, 395 F. Supp. 3d at 1313 (holding that Plaintiffs cannot

---

*FAN*, 395 F. Supp. 3d at 1311 (holding that joint-action test may be satisfied where "'private party was a willful participant'" in joint action).

satisfy joint action test because Plaintiffs fail to allege that "the government played any role in shutting down FAN's Facebook page or blocking FAN's access to its Facebook account").

Plaintiffs fail to respond to *any* of those arguments or to the many authorities Facebook cited in support of them. Nor do Plaintiffs address this Court's prior holding that allegations like those on which Plaintiffs rely, such as that "Facebook was 'actively working with the U.S. government' and 'providing information'" to the government, are insufficient to satisfy the joint action test. *FAN*, 395 F. Supp. 3d at 1312.

Plaintiffs have therefore plainly failed to establish that the "joint action" test is met and that the First Amendment would apply at all to Facebook's alleged conduct here.

## III.   CONCLUSION

For the reasons stated above, and those stated in the Motion, Plaintiffs' FAC should be dismissed without leave to amend.

DATED: November 8, 2019                MUNGER, TOLLES & OLSON LLP
                                       ROSEMARIE T. RING
                                       JONATHAN H. BLAVIN


                                       By:  /s/ Rosemarie T. Ring
                                            ROSEMARIE T. RING
                                       Attorneys for Defendant Facebook, Inc.